46681. TINGLE v. HARVILL.

ARGUED NOVEMBER 3, 1971—DECIDED JANUARY 19, 1972.

316

*William G. McRae,* for appellant.
*Ross Arnold, William H. Cate,* for appellee.

CLARK, Judge. ■ In the order dealing with the disqualification motion it is stated that "the court having ruled that the motion to dismiss the appeal, as filed by the appellee, be overruled and that the appeal proceed to trial before a jury, therefore, denies the motion and *leaves to the trial judge who presides over the trial of this case the question of whether said attorney should be disqualified from proceeding with his representation of the appellee."* (Emphasis supplied.)

In view of the terms of this order dealing with the question of disqualification, it would be inappropriate for this court to deal with this motion at this time. It is solely interim and must be decided hereafter upon the evidence relevant thereto by the judge presiding over the trial.

Nevertheless, we are constrained to state that even if the trial judge rules the attorney should be disqualified, that the remainder of the motion to strike all pleadings filed by him should be disregarded because it would be manifestly wrong for a party to be denied her day in court because of disqualification of her lawyer. (We emphasize we are not expressing any opinion as to the propriety of Mr. McRae representing Mary Alice Tingle as this presently is not before this court and has not yet been passed upon as is shown by the portion of the order we have emphasized.)

■ Thereupon, on July 9, 1971, Mary Alice Tingle, through her attorney of record, filed an application for a certificate for immediate appeal. After reciting the facts as herein chronologically reported, the petition recites that the order of Judge McKenzie dated July 1st was filed with the clerk of the superior court on July 2nd with copies being mailed in an envelope postmarked July 2, 1971. However, the Fulton County Courthouse was closed on July 3rd, 4th and 5th. Therefore, when appellee's attorney went to the courthouse on July 6th, the first available date to make an application for a certificate that would permit immediate review, he was informed Judge McKenzie had departed for a trip to Europe and would not return until August 3, 1971. Faced with this development the attorney avers it was impossible to make application to the trial judge for a certificate of importance within ten days of the entry of the order and that Rule 15 (6) of the Superior Court of Fulton County provides: "The Presiding Judge, Civil Division, may hear emergency matters and such other cases as he deems proper . . ." He, therefore, applied to the designated Presiding Judge, Hon. Durwood T. Pye. Judge Pye entered an order on July 9th reciting all of the details concerning the entry of the July 1st order by Judge McKenzie, his subsequent absence, the lack of opportunity for counsel to apply to Judge McKenzie for the needed certificate for immediate review, and "it further appearing to the undersigned upon examination of the record in this appeal proceeding that the orders, decisions and judgments entered therein on July

2, 1971, involved matters of first impression which have not heretofore been passed upon by the appellate courts of this State which are of great public importance, and are of such importance to the case that immediate review thereof should be had to the end that the business of this court be conducted in an orderly and efficient manner, and that the absence of Judge McKenzie from the jurisdiction for such extended period of time constitutes an emergency matter in such action." Presiding Judge Pye thereupon entered the requisite certificate of immediate review.

The guardian has moved in this court to dismiss the appeal on the ground that the certificate for immediate review required by *Code Ann.* § 6-701 (a 2) was not signed by Judge McKenzie, on the ground that the Code Section requires this to be done by "the trial judge." Since it would be manifestly unfair to deprive a litigant of her right of appeal in a case that obviously would have been designated by the trial judge as warranting a certificate for immediate review because it is a case of first impression in our State, and since the rules of the Superior Court of Fulton County have specifically provided for an emergency, and in view of Judge Pye as the Presiding Judge having signed the required certificate in conformance with the power placed in him by the Fulton County Superior Court rules, the motion to dismiss the appeal to this court is denied.

■ This brings us to the primary question: Does a guardian have the right of appeal to the superior court from an order of the court of ordinary restoring the ward to competency?

This question has never been decided in Georgia. Both of the able advocates for the parties herein argue that the question can be answered by determining whether the judgment entered by the ordinary is ministerial or judicial. As is well known, many matters that are non-judicial are assigned by our statutes to the ordinary. A large number of such items are ministerial in nature. This is not so, however, as to the instant situation. It is the opinion of this court that judgments rendered in the court of ordinary

dealing with declaration of incompetency and restoration to competency are inherently judicial by their very nature because of the impact thereof on the important American rights to liberty of person and freedom to own and manage one's property. These are rights guaranteed by our Constitutions and protected by judicial processes.

This is particularly important to the citizenry of Georgia as in many counties we have laymen serving as judges of the court of ordinary. It is essential to the welfare of our people that all of their rulings as ordinary even though they are not lawyers, when judicial in nature should be subject to review by a superior court judge trained in the law that provides impartial protection for the rights and privileges to which every Georgian is entitled under our democratic processes. The liberty of a person and his rights to manage his property when passed upon by a tribunal designated with the badge of "Court" should be classified as judicial in order that an educated judge skilled in the law may make the ultimate decision on this important question as to whether an individual is legally sane or otherwise, and on his capability to manage his property. Therefore, we rule that judgments by a court of ordinary ruling on mental competency or incompetency are judicial in nature and appealable to the superior court by the losing party.

This view is supported by an analysis of the Act which amended Code Title 88 adopted by the legislature in 1969 and contained in the Laws of 1969 beginning at page 505 and running through page 545. That salutary legislation captioned "Hospitalization of Mentally Ill Persons" modernized our laws dealing with mentally ill persons and their rights and is codified as Chapter 88-5. The concern of our law makers with the protection of legal rights is shown throughout and is particularly emphasized by the inclusion of a portion entitled "Rights of Patients" which takes up eleven pages in the statute. In that portion as well as throughout this legislation there is a clear intent by our legislators to make certain that the court of ordinary acting

in its *judicial* capacity shall have jurisdiction of our citizens in the field of mental health. For example, § 88-502.11 provides for judicial supervision, § 88-502.12 gives the patient the right to legal counsel, and § 88-502.16 says "the patient, his representatives, or his attorney may appeal any order of the court of ordinary rendered in a proceeding under this Chapter to the superior court of the county in which the proceeding was held." This section further states that it shall be made in the same manner "as other appeals from the court of ordinary to the superior court, where the issue shall be submitted to a jury as in other cases before that court, with further rights of review as now or hereinafter are provided by law."

In the case sub judice the entire procedure that was followed was in conformity with the provisions of this statute, including the express allegation contained in paragraph numbered 5 of the petition naming "petitioner's representative and nearest adult relatives residing within the State of Georgia, as defined by Section 88-507.3 of the Code of Georgia."

An additional element in support of our position is the fact that the finding of the commission on the question of competency is not self-executing.[1] It is not until the judge of the court of ordinary enters his order in his judicial capacity that the guardianship is terminated and the petitioner obtains a restoration of her legal rights.

■ We recognize there is a split of authority on the question of whether a guardian has standing to appeal an order terminating his ward's incompetency. See 44 CJS 152 and 41 AmJur2d 568. See also the annotation in 122 ALR 541, which indicates the weight of authority leans toward the

---

[1]In this respect the guardianship of an incompetent differs from that of a minor where the guardianship terminates without any order when the minor becomes of age (save only for the purpose of settlement by the guardian with his ward). *Morgan v. Woods,* 69 Ga. 599; *Pardue Medicine Co. v. Pardue,* 194 Ga. 516 (22 SE2d 143).

position we have taken that a guardian does have the right to appeal a ruling terminating the incompetency. A reading of the cases cited in these encyclopedias shows that the decisions generally turn on the language of their statutes, particularly as to the right of appeal. For instance, the able advocate for the ward relies upon Ensign v. Faxon, 224 Mass. 145 (112 NE 948). There the Supreme Court of Massachusetts ruled that the guardian of an insane ward had no right of appeal from a decree of the probate court discharging him from his trust as guardian because such guardian is not regarded as "a person who is aggrieved" within the meaning of the Massachusetts statute, but the sense of the language used in our statute is not thus limited. Our procedure clearly seeks to protect the ward as well as the guardian and the members of the family who are required to receive notification by granting their full day in court, including all appeals permitted in judicial proceedings.

The fact that the guardian is a party interested in the outcome was recognized at the inception of the instant case in that the petition for restoration named Mrs. Harvill as her representative and requested that she be notified. The rule nisi issued by the court was directed to Mrs. Harvill in her representative capacity, whereas the other two members of the ward's family were designated as the representatives of the petitioner.

The philosophy of Georgia law is expressly stated in *Code* § 3-105 which provides that "for every right there shall be a remedy, and every court having jurisdiction of the one may, if necessary, frame the other." This exact language has been carrried in our Codes since the 1863 Code. As was pointed out by the late Judge Arthur Powell in *Moore v. City of Winder,* 10 Ga. App. 384 (73 SE 529), this maxim was derived from the common law "ubi jus ibi remedium" (there is no wrong without a remedy.) Judge Powell goes on to say that "when this maxim was given not only a more beneficent construction, but also new life and broader scope, by the statute of Westminster II (13 Edw. 1, Ch. 24), which

required that a writ should be framed to enforce each new right as it might arise, though there might be no precedent, it became a fundamental legal principle of English law, in effect declaring that no man should be deprived of any legal right which was given him, because of any failure to provide a remedy to meet its particular circumstances." It is true that review procedure to an appellate court is not a necessary part of a legal system required by due process, nor is the right of appeal an inherent or inalienable right. 4 AmJur2d 533. This, however, does not apply to a case such as the present one where the right of appeal includes the right to a trial by jury. With the statute in this situation requiring notice to the guardian, then such guardian should not be denied a right to take an appeal from the court of ordinary. As is hereinabove stated, this is particularly true in view of the express language of the statute dealing with the subject of mental health.

The judgment of the superior court judge adverse to the motion to dismiss the appeal in the superior court was correct.

*Judgment affirmed. Hall, P. J., and Eberhardt, J., concur.*