A09A1397. JORDAN JONES AND GOULDING, INC. v. NEWELL RECYCLING OF ATLANTA, INC.

(682 SE2d 666)

BLACKBURN, Presiding Judge.

Jordan Jones and Goulding, Inc. ("JJ&G"), a professional engineering firm, appeals from the trial court's denial of its motion for summary judgment on the breach of contract claim asserted against it by Newell Recycling of Atlanta, Inc. ("Newell"). JJ&G asserts that the trial court erred in finding that Newell's claims were subject to the six-year statute of limitation applicable to actions on written contracts, as opposed to the four-year statute of limitation applicable to claims of professional malpractice sounding in contract. Alternatively, JJ&G argues that even if viewed as strictly a breach of contract action, Newell's claim is subject to the four-year limitation period applicable to contracts that are partly in writing and partly in parol. We find that the record shows unequivocally that Newell is asserting a professional malpractice claim, based upon JJ&G's alleged breach of its contractual duties to provide competent, professional design and engineering services. Thus, because Newell failed to file suit within the applicable, four-year limitation period, we reverse the trial court's order.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Iwan Renovations, Inc. v. North Atlanta Nat. Bank*.[1]

So viewed, the record shows that Newell is a corporation in the business of purchasing and processing scrap metal, which it then re-sells. In 1997, Newell contacted JJ&G about providing design and engineering services for a new automobile shredding facility it

---

[1] *Iwan Renovations, Inc. v. North Atlanta Nat. Bank*, 296 Ga. App. 125, 126 (673 SE2d 632) (2009).

wanted to build in Gwinnett County. After several meetings with representatives from Newell, JJ&G prepared a proposal for the project, titled "*Draft* Scope of Work[:] Newell Recycling of Atlanta[,] New Site — Duluth, Georgia," and forwarded the same to Newell on August 15, 1997.[2] (Emphasis in original.) The Draft Scope of Work outlined six different project phases that JJ&G proposed to work on and attached thereto was a detailed, five-page task list related to the first project phase, environmental site assessment. The cover letter that JJ&G sent to Newell with these documents explained:

> We are enclosing a draft Scope of Work which [we] feel addresses our environmental assessment and permitting needs as well as facilities planning/design and bidding/ construction phase needs for the New Recycling Facility in Duluth. We welcome your input . . . to ensure that we have covered all the bases. While you are reviewing this Scope of Work for completeness, we will be developing a budget estimate.

On August 22, 1997, JJ&G sent Newell a second letter, providing them with a cost estimate for the first three project phases outlined in the Draft Scope of Work. The letter further stated:

> The [cost of the] remaining 3 [phases] can not be accurately estimated until some definition of your proposed facilities can be developed and a site visit of the existing buildings and features can be arranged. We would propose to perform this work on an hourly bases [sic] and would only bill you for completed task.

Representatives of Newell and JJ&G thereafter met several times to discuss and plan the details of the new facility and the engineering services that JJ&G would provide in connection with the project. By the spring of 1998, the parties had verbally agreed that there would be concrete pavement around the shredding machine to act as a work platform and to control drainage. JJ&G, therefore, developed a design for these pavements, which specified sub-grade

---

[2] Newell considered two different sites for the facility: one in Duluth and one on Amweiler Road in Doraville. Although JJ&G drafted its scope of work for the Duluth site, Newell eventually decided to locate the shredding facility at the Amweiler Road site. The Newell vice president who oversaw the project testified at his deposition that JJ&G did not prepare a scope of work or cost estimate specific to the Amweiler Road site, explaining that the draft scope of work presented for the Duluth site was "[g]eneric in the sense that this outline would be applicable to any site that [Newell might] look at or consider."

preparation, concrete mix, and concrete thickness, and added this design to the site plans and specifications. Site construction began in the fall of 1998, with a firm other than JJ&G acting as the construction manager. During the course of construction, JJ&G made several revisions to the plans and specifications, including changes to the concrete pavement design. JJ&G made the last change to the concrete pavement design in June 1999, and completed all engineering work for such pavements by the end of July 1999. All engineering and construction work on the project was completed by the end of September 1999.

After the project was completed and the facility became operational, the concrete paving surrounding the shredder began to crack. In May 2000, Newell informed JJ&G that the concrete pavement was failing. Blaming that failure on alleged inadequacies in JJ&G's design of the concrete pavement, Newell initiated the current litigation against JJ&G in August 2004. Newell's complaint asserts a single claim for breach of contract, and alleges that "[b]y entering into the [c]ontract with Newell to provide the design of the Project, JJ&G contracted to perform its required services with that degree of care, skill, and ability ordinarily expected of prudent design professionals and civil engineers under similar circumstances. . . ." The complaint sets forth nine alleged contractual breaches, and states that these acts

> constitute[d] the performance of design professional services under the [c]ontract with Newell in a manner which was in breach of said [c]ontract because such services were below that degree of care, skill, and diligence commonly possessed [and] exercised by reasonably skillful and prudent design professionals in Georgia . . . under the same or similar circumstances and said breaches of the [c]ontract with Newell constitute design professional negligence and malpractice.

To comply with the requirement of OCGA § 9-11-9.1, which applies to all claims for professional malpractice, Newell attached to its complaint the affidavit of an engineering expert.

JJ&G moved for summary judgment, arguing that Newell's complaint asserted a claim for either professional malpractice, breach of an oral contract, or breach of a contract that was partly in writing and partly in parol, and that each of these claims was subject to a four-year statute of limitation. JJ&G argued that any contractual breach occurred either at the time the concrete paving was designed (June 1999) or when the engineering work on such paving was completed (July 1999), and that Newell was aware of the

problems with the concrete paving no later than May 2000. Thus, Newell's failure to file suit until August 2004 meant that its claim was time-barred.

The trial court denied JJ&G's summary judgment motion, finding: (1) that while a four-year statute of limitation applied to claims for *legal* malpractice based upon a written contract for legal services, malpractice claims based on a written contract for other types of professional services were subject to the six-year limitation period found in OCGA § 9-3-24;[3] and (2) there existed a question of fact as to whether JJ&G's August 15, 1997 and August 22, 1997 letters to Newell, together with the Draft Scope of Work, constituted a written contract. JJ&G sought and received a certificate of immediate review for the trial court's order and filed an application for an interlocutory appeal.[4] We granted that application and this appeal followed.

As is explained below, assuming arguendo that JJ&G's August 1997 letters to Newell, together with the Draft Scope of Work, are sufficient to constitute an enforceable, written contract between the parties, Newell's claim is nevertheless barred by the applicable statute of limitation.

The allegations of the complaint demonstrate that Newell is asserting a professional malpractice claim against JJ&G. See *Goodin v. Gwinnett Health System*[5] ("[a]n action alleges professional malpractice when it calls into question the conduct of a professional in his area of expertise") (punctuation omitted). Specifically, Newell's claim is based upon JJ&G's alleged breach of its contractual obligation to provide professional services, by failing to perform such services "in accordance with the professional [standard] of care." Id. See also *Mauldin v. Sheffer*[6] (a claim for engineering malpractice

---

[3] That statute provides: "All actions upon simple contracts in writing shall be brought within six years after the same become due and payable."

[4] Newell opposed the application, arguing that because the certificate of immediate review was signed by the presiding judge, rather than the trial judge who issued the order, the certificate failed to comply with OCGA § 5-6-34 (b). Thus, in our order granting the application, we directed the parties to "address the issue of whether the certificate of immediate review is invalid because it was not signed by the assigned trial judge." In its brief, however, Newell withdraws its challenge to the validity of the certificate of immediate review, citing the affidavit given by JJ&G's counsel in its response to Newell's opposition. That affidavit showed that the trial judge had left town after signing the order denying JJ&G's motion for summary judgment and would not return before the expiration of the ten-day period for obtaining a certificate of immediate review. Under such circumstances, the request for a certificate of immediate review, if timely, may be presented for grant or denial to another judge of the same court having authority to hear emergency matters. *Tingle v. Harvill*, 125 Ga. App. 312, 318 (2) (187 SE2d 536) (1972). See also *Freemon v. Dubroca*, 177 Ga. App. 745 (1) (341 SE2d 276) (1986).

[5] *Goodin v. Gwinnett Health System*, 273 Ga. App. 461, 462 (2) (615 SE2d 129) (2005).

[6] *Mauldin v. Sheffer*, 113 Ga. App. 874, 880-881 (150 SE2d 150) (1966).

may be brought as either a tort or contract claim).

Under Georgia law, all "malpractice claim[s] sounding in contract [are] governed by the four-year statute of limitation [found] in OCGA § 9-3-25." *Harrison v. Beckham.*[7] See also *Consolidated Mgmt. Svcs. v. Halligan*[8] ("[a] breach of duty of professional competence falls within the four-year statute of limitation as set forth in OCGA § 9-3-25"). Contrary to the trial court's ruling, Georgia's courts have never limited this holding to cases involving claims of legal malpractice. See *Brock v. Allen*[9] (OCGA § 9-3-25 applies to a malpractice claim against an exterminator); *Landmark Engineering v. Cooper*[10] (applying the four-year statute of limitation to a professional malpractice claim against an engineering firm); *Consolidated Mgmt. Svcs.*, supra, 186 Ga. App. at 622 (1) (holding that a four-year statute of limitation applies to claims for accounting malpractice).

Despite this precedent, Newell argues that because its professional malpractice claim is based upon a written contract, the six-year limitation period found in OCGA § 9-3-24 should apply. In support of its position, Newell points out that OCGA § 9-3-25 applies to claims asserting a breach of "any implied promise or undertaking," oral contracts, or contracts that are partly in writing and partly in parol. See OCGA § 9-3-25; *Plumlee v. Davis.*[11] This argument, however, ignores those cases explicitly holding that OCGA § 9-3-25 applies even to those professional malpractice claims premised on the breach of a written contract for professional services. See, e.g., *Old Republic Nat. Title Ins. Co. v. Attorney Title Svcs.*;[12] *Plumlee*, supra, 221 Ga. App. at 853 (3). As those cases explained, the four-year statute applies to such claims because the contractual duty allegedly breached is not one specified within the written contract itself. Rather, that obligation is imposed by law and therefore implied in the parties' contract. *Old Republic,* supra, 299 Ga. App. at 8 (1); *Plumlee*, 221 Ga. App. at 852 (3). See also *Hamilton v. Powell, Goldstein, Frazer & Murphy*[13] ("[t]he law imposes upon . . . professional[s] . . . performing medical, architectural, engineering, and . . . other [professional] services, pursuant to their contracts made with their clients, an obligation" to perform such services in accordance

[7] *Harrison v. Beckham*, 238 Ga. App. 199, 200 (1), n. 2 (518 SE2d 435) (1999).

[8] *Consolidated Mgmt. Svcs. v. Halligan*, 186 Ga. App. 621, 622 (2) (368 SE2d 148) (1988).

[9] *Brock v. Allen*, 256 Ga. App. 397, 400 (2) (568 SE2d 536) (2002).

[10] *Landmark Engineering v. Cooper*, 222 Ga. App. 752, 753 (476 SE2d 63) (1996).

[11] *Plumlee v. Davis*, 221 Ga. App. 848, 852 (3) (473 SE2d 510) (1996).

[12] *Old Republic Nat. Title Ins. Co. v. Attorney Title Svcs.*, 299 Ga. App. 6 (682 SE2d 134) (2009).

[13] *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 167 Ga. App. 411, 414 (1) (306 SE2d 340) (1983).

with the applicable standard of care) (punctuation omitted). Newell's claim demonstrates the soundness of this reasoning. Although based on a written contract, Newell's claim of breach is not premised on an express contractual provision. Rather, it is based on JJ&G's breach of its legal obligation to perform the contracted-for services in conformity with the professional standard of care.

Nor do we find any merit in Newell's argument that *Costrini v. Hansen Architects*,[14] relied on by the trial court, requires us to apply a six-year statute of limitation in this case. In *Costrini*, this Court rejected a trial court's ruling that a claim for breach of a written construction contract was subject to the four-year statute of limitation applicable to tort claims for damage to property (OCGA § 9-3-30), and held that such a claim was governed by the six-year statute applicable to claims for breach of a written contract. We therefore affirmed the trial court's grant of summary judgment in favor of the defendants, finding that the plaintiffs had failed to file suit within six years after the construction work was substantially completed. Id. at 137 (1). Although the defendant in *Costrini* was an architect, there is nothing in the opinion that suggests the plaintiffs had sued him in his capacity as an architect, for professional malpractice. Specifically, there was no indication that the plaintiffs' claim was based on the parties' contract for the defendant's professional, architectural services, or his failure to perform such professional services in accordance with the applicable standard of care. Rather, it appears that plaintiffs had sued the defendant in his capacity as a general contractor, for ordinary negligence and fraud.

Because Newell's breach of contract claim is premised on a written contract for professional services and "calls into question the conduct of . . . professional[s] in [their] area of expertise[,]" it is a claim for professional malpractice ((punctuation omitted) *Baskette v. Atlanta Center for Reproductive Medicine*[15]), and the four-year statute of limitation applies. *Old Republic*, supra, 299 Ga. App. at 8 (1). The statute of limitation began to run on Newell's claim, at the latest, in September 1999, when all engineering work on the project was completed. See, e.g., *Jones, Day, Reavis & Pogue v. American Envirecycle*,[16] ("a breach of contract would occur upon the commission of the wrongful act violating the contractual duty"). Accordingly, because it did not file suit until August 2004, Newell's claim is time-barred. We therefore reverse the order of the trial court denying

---

[14] *Costrini v. Hansen Architects*, 247 Ga. App. 136 (543 SE2d 760) (2000).

[15] *Baskette v. Atlanta Center for Reproductive Medicine*, 285 Ga. App. 876, 881 (5) (648 SE2d 100) (2007).

[16] *Jones, Day, Reavis & Pogue v. American Envirecycle*, 217 Ga. App. 80, 82 (1) (456 SE2d 264) (1995).

JJ&G's motion for summary judgment.
*Judgment reversed. Adams and Doyle, JJ., concur.*

DECIDED JULY 21, 2009

*Smith, Currie & Hancock, Joseph C. Staak, Robert O. Fleming, Jr.,* for appellant.
*Shapiro, Fussell, Wedge & Martin, H. Fielder Martin, Stephen G. Lowe,* for appellee.