S08A1705. RABER v. THE STATE.
(674 SE2d 884)

CARLEY, Justice.

Appellant Paul E. Raber was indicted for 33 counts of violating OCGA § 16-13-42 (a) (1) by unlawfully distributing or dispensing a controlled substance, in that he, being a licensed practitioner under the laws of this state, "did unlawfully issue a prescription document signed in blank in violation of OCGA § 16-13-41 . . . ." This language is taken from the first sentence of OCGA § 16-13-41 (h), which provides that "[i]t shall be unlawful for any practitioner to issue any prescription document signed in blank." The trial court denied a

---

[17] *Roberts v. State*, 267 Ga. 669, 671 (482 SE2d 245) (1997) (quoting *Meredith v. State*, 211 Ga. App. 213, 215 (438 SE2d 644) (1993)).

motion filed by Appellant to dismiss the indictment on constitutional due process grounds. He appeals pursuant to our grant of his application for interlocutory appeal.

Appellant contends that OCGA § 16-13-41 (h) is unconstitutionally vague as applied in this case. Indeed, where, as here, First Amendment rights are not implicated, a vagueness challenge to a statute must be examined in the light of the facts of the case at hand, unless the statute is shown to be impermissibly vague in all of its applications. *Santos v. State*, 284 Ga. 514-515 (1) (668 SE2d 676) (2008); *Catoosa County v. R.N. Talley Properties*, 282 Ga. 373, 374 (651 SE2d 7) (2007). "[O]ne whose own conduct may be constitutionally proscribed will not be heard to challenge a law because it may conceivably be applied unconstitutionally to others. [Cits.]" *Hubbard v. State*, 256 Ga. 637, 638 (352 SE2d 383) (1987). " 'A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.' [Cits.]" *Catoosa County v. R.N. Talley Properties*, supra at 375.

Although the indictment here does not set forth factual allegations and the facts of this case have not been established by trial, the record and briefs provide allegations of fact which are put forth by the State in support of its indictment, are uncontested by Appellant, and are sufficient to permit a consideration of the vagueness challenge. *Randolph v. State*, 269 Ga. 147, 149 (2) (496 SE2d 258) (1998); *Hall v. State*, 268 Ga. 89, fn. 2 (485 SE2d 755) (1997). The trial court accurately summarized the relevant factual allegations as follows:

> It is undisputed that the indictment in this case is the result of a pre-signed prescription pad that contained thirty-three separate forms found in a safe at the home of [Appellant's] nurse practitioner. The State alleges that [Appellant] violated OCGA § 16-13-41 [(h)] when he signed these prescription forms in blank and provided them to his nurse practitioner.

Appellant argues that, because OCGA § 16-13-41 (h) does not define what a physician must do to "issue" a prescription document, he did not have fair notice that providing a pre-signed blank prescription pad to a member of his medical staff in the course of her employment would subject him to prosecution for a felony offense.

" " " '(A) solemn act of the legislature is presumed to be constitutional. (Cit.)' (Cit.)" ' [Cit.] 'The rules of statutory construction require this court to construe a statute as valid when possible. (Cit.)' [Cit.]" *Rodriguez v. State*, 284 Ga. 803, 804 (1) (671 SE2d 497) (2009).

A law may be unconstitutionally vague if it fails to provide the kind of notice that will enable ordinary people to conform their conduct to the law or if it fails to provide sufficient guidelines to govern the conduct of law enforcement authorities, thus making the law susceptible to arbitrary and discriminatory enforcement. [Cits.]

*In re D. H.*, 283 Ga. 556-557 (2) (663 SE2d 139) (2008). We must consider the sufficiency of the notice provided by OCGA § 16-13-41 (h) "in light of the specific conduct engaged in by [Appellant], and not abstract or marginal offenses." *Douglas v. State*, 263 Ga. 748, 749 (2) (438 SE2d 361) (1994). See also *Connally v. State*, 265 Ga. 563, 564 (3) (458 SE2d 336) (1995).

The " 'prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness for "(i)n most English words and phrases there lurk uncertainties." . . .' (Cit.)" [Cit.]

*Lindsey v. State*, 277 Ga. 772, 773 (1) (596 SE2d 140) (2004). In evaluating a vagueness challenge to " 'the constitutionality of a statute, we must examine it in its entire context.' [Cit.]" *Lindsey v. State*, supra. Thus, the prohibition in OCGA § 16-13-41 (h) on issuance of any prescription document signed in blank must be interpreted in pari materia with the remainder of the statute, especially the same subsection. See *Lindsey v. State*, supra; *Pacolet Mfg. Co. v. Weiss*, 185 Ga. 287, 297 (2) (194 SE 568) (1937) (construing the term "issued" in its statutory context).

Prior subsections of OCGA § 16-13-41 contain several requirements for the issuance of a prescription in writing. When a practitioner writes a prescription drug order, he "shall include the name and address of the person for whom it is prescribed, the kind and quantity of [the] controlled substance, the directions for taking, the signature, and the name, address, telephone number, and DEA registration number of" the practitioner. OCGA § 16-13-41 (b), (d) (2). Although the latter information identifying the practitioner may be preprinted on the prescription form, the other necessary information is unique to the individual patient and, thus, must always be filled in before the prescription can be issued. Furthermore, "[s]uch prescription shall be signed and dated by the practitioner on the date when issued . . . ." OCGA § 16-13-41 (b), (d) (2). Therefore, a "prescription" is "issued" only when both the signature mandate and the other contemporaneous requirements are fulfilled. OCGA §

254

16-13-41 (a) and (d) (1) may also imply that a written prescription is issued only when the "ultimate user" or someone on his behalf has received it.

However, OCGA § 16-13-41 (h) addresses issuance of a prescription "document" rather than issuance of the prescription itself. That subsection deals with instances where requirements other than the signature are not fulfilled and, thus, the prescription itself is not issued. Entirely unlike other subsections of OCGA § 16-13-41, subsection (h) covers the circumstance of a prescription "document signed in blank." In that circumstance, the prescription form, which may identify the practitioner by some preprinted information, is not filled in with any other required information, except for the signature. Thus, the first sentence of subsection (h), on its face, excludes many of the requirements for issuance of a prescription set forth in preceding portions of the statute. Furthermore, subsection (h) neither mentions nor implies that the practitioner must give the document to the "ultimate user."

To the contrary, the concluding sentence of OCGA § 16-13-41 (h) compels the opposite conclusion when it states that "[t]he possession of a prescription document signed in blank by a person other than the person whose signature appears thereon shall be prima-facie evidence of a conspiracy between the possessor and the signer to violate" the Georgia Controlled Substances Act. Because this provision broadly includes possession of the document by any "person other than the person whose signature appears thereon," it is completely inconsistent with exclusion of a person who is a staff member, regardless of whether she is intended to be the ultimate user herself or is instead expected to complete the document in the future at the direction of the licensed physician who employs her. "The various provisions of a statute 'should be viewed in harmony and in a manner which will not produce an unreasonable or absurd result. (Cits.)' [Cit.]" *Lindsey v. State*, supra at 774 (1). Although this principle of statutory construction is acknowledged in the dissent authored by Presiding Justice Hunstein, that opinion does not deal with language which is contained in the very subsection that it is construing and which cannot be reconciled with its analysis. If the term "issue" in OCGA § 16-13-41 (h) could be defined so as to exclude the conveyance of a prescription document signed in blank to a staff member acting in the course of her employment, then her possession of such a document would be wholly innocent and, contrary to the final sentence of subsection (h), could not logically constitute prima-facie evidence of a conspiracy. Properly construed, therefore, the statute provides definite warning to persons of ordinary intelligence that the conduct alleged here is proscribed.

Appellant also argues, citing *Hall v. State*, supra at 93-95 (2), that the language of OCGA § 16-13-41 (h) allowed for arbitrary and discriminatory enforcement based upon unintended consequences of his conduct. At the hearing on the motion to dismiss, Appellant introduced the search warrant for the nurse practitioner's home. The supporting affidavit shows that the nurse practitioner keeps prescription pads pre-signed by Appellant in her residence, that her daughter admitted that she had stolen some of the prescription forms, and that another woman died from an apparent overdose of a drug which had been obtained by a prescription listing Appellant as the prescribing physician. Although the crimes charged here were discovered as a result of the investigation into that death, none of the charges against Appellant is based on the prescription that was in the possession of the deceased woman. Furthermore, the prosecutor was not required to make a difficult judgment in hindsight regarding the nature and extent of the risk in Appellant's conduct. Compare *Hall v. State*, supra. The focus of *Hall* and its progeny is not on the discovery of the crime, but rather on the decision to prosecute.

> This is not a case in which the prosecutor's decision to consider [Appellant's] act to be criminal and to be a proper subject of prosecution is made only because of the act's consequence. [Cit.] Rather, [Appellant's] act was criminal when he [provided the pre-signed prescription forms to his nurse practitioner], without regard to the result of that act. . . . "[T]he fact that application of the statute's standards sometimes requires an assessment of the surrounding circumstances to determine if the statute is violated does not render it unconstitutional. [Cit.]" [Cits.]

*Banta v. State*, 281 Ga. 615, 617 (1) (642 SE2d 51) (2007). See also *State v. Boyer*, 270 Ga. 701, 703 (1) (512 SE2d 605) (1999). In this case, it is not necessary to assess the surrounding circumstances in order to determine whether OCGA § 16-13-41 (h) was violated. The tragic death set forth in the affidavit is relevant only because it eventually led to the discovery of the separate crimes charged here. Thus, that death does not indicate that enforcement of the statute was arbitrary and discriminatory. Nevertheless, it does illustrate the grave danger which is inherent in permitting a practitioner to give anyone prescription documents signed in blank. This danger is undoubtedly the legislature's rationale for a bright-line prohibition on such acts, regardless of who the recipient is or exactly what risk the particular circumstances reveal.

Accordingly, we hold that OCGA § 16-13-41 (h) is not unconstitutionally vague as applied in this case.

*Judgment affirmed. All the Justices concur, except Sears, C. J., Hunstein, P. J., and Melton, J., who dissent.*

HUNSTEIN, Presiding Justice, dissenting.

A physician determines that the patient he has just examined needs a prescription for a certain drug. In the presence of the patient and attending nurse, the physician signs the prescription document but, uncertain of the proper spelling of the drug, hands the prescription document to his nurse while he thumbs through his Physicians' Desk Reference. Thanks to the majority and its unreasonable interpretation of OCGA § 16-13-41 (h), the physician has just committed a felony punishable by five years imprisonment and a $25,000 fine. It does not matter that the nurse is standing directly next to the doctor, perhaps filling in the patient's name and address; it does not matter that the physician retrieves the signed document moments later; it does not matter that the physician intends the patient in the room to be the ultimate user of the prescription. Under the majority's interpretation of OCGA § 16-13-41 (h), the physician "issued" the prescription document to the nurse and because the document so issued was signed in blank, the physician violated OCGA § 16-13-42 (a) (1) by unlawfully "distribut[ing] or dispens[ing] a controlled substance in violation of Code Section 16-13-41."

The majority justifies its interpretation of "issue" in OCGA § 16-13-41 (h) by referencing the usual statutory interpretation language but it omits the most pertinent rule of construction, namely, our duty "to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature." *State v. Mulkey*, 252 Ga. 201, 204 (312 SE2d 601) (1984). The Legislature enacted OCGA § 16-13-41 (h) to criminalize the behavior of those physicians who are nothing more than drug dealers with medical licenses. The Legislature had in mind individuals such as Herbert Garfield, the physician in *Price v. State*, 247 Ga. 58 (273 SE2d 854) (1981), who conspired with a mechanic named Price to use "various 'script runners'" to fill the illegal prescriptions Garfield wrote. Id. at 59. Nothing in the Controlled Substances chapter of the Criminal Code of Georgia indicates that the Legislature intended to criminalize the behavior of legitimate physicians who give pre-signed blank prescription documents to trusted health care professionals on their staff for the sole purpose of facilitating the delivery of a specific prescription ordered by the physician to a patient under the physician's direct medical supervision. Yet this is precisely the construction the majority gives to OCGA § 16-13-41 (h) so as to bring within the ambit of this statute practitioners like Dr. Raber, who has been charged with 33 felony counts of violating OCGA § 16-13-42 (a) (1),

all because he gave his nurse a pad of pre-signed blank prescription documents *not* for her own use but for his patients' legitimate medical needs.

It is uncontroverted that the term "issue" is not defined in OCGA § 16-13-41, in OCGA § 16-13-21 (definition of terms used in Chapter 13 of Title 16) or elsewhere in the Code. Reviewing the manner in which the Legislature uses the term "issue" elsewhere in OCGA § 16-13-41, even the majority acknowledges the Legislature's clear intent that a prescription "issue" when the ultimate user or someone on her behalf has received it. The majority, however, then rejects that common sense interpretation of the term and seizes upon hair-splitting nuances in language to conclude that the Legislature intended "issue" to have a completely different interpretation in subsection (h) of OCGA § 16-13-41 than it has in prior subsections in the same statute. Suddenly, "issue" consists merely of the physical transfer of the prescription document from a physician to any other person, regardless of that person's identity, with the issuance becoming a felony when the document that is transferred is signed but otherwise blank. Hence, the physician in the hypothetical above has committed a felony merely by handing a signed but blank prescription document to the nurse standing next to him regardless of the fact that the patient in the room is the "ultimate user" of that prescription document and is, in fact, the person who thereafter presents the completed document to a pharmacy for dispensing of the prescribed medicine. This is the "unreasonable" and "absurd consequence[ ] not contemplated by the legislature" that results from the majority's rejection of a common sense interpretation of "issue" in subsection (h) consonant with its use elsewhere in OCGA § 16-13-41. See *State v. Mulkey*, supra.

A criminal statute must be read according to the natural and obvious import of its language, and its operation should not be limited or extended by application of subtle and forced interpretations. *Foster v. State*, 273 Ga. 555, 556 (1) (544 SE2d 153) (2001). Applying that rule of statutory construction to avoid an absurd and unintended result, I would recognize that "issuance" of a prescription document is more than the mere act of transferring the form from a physician to another. Instead, issuance of a prescription form reflects that the physician has given the form to the ultimate user, i.e., the person who has been enabled by the issuance of the form to obtain controlled substances. This construction of issuance is consistent with the Legislature's intent in enacting OCGA § 16-13-41 (h) and the evil it sought to correct by forbidding the issuance of a "signed in blank" prescription form, i.e., the use of such a form to obtain controlled substances by unauthorized persons without a legitimate medical purpose and without proper medical supervision.

This is the construction that would categorize Dr. Raber not as a "drug dealer with a medical license" subject to felony punishment for violating OCGA § 16-13-42 (a) (1), but as a small-town physician who engaged in unprofessional conduct under the rules of the Composite State Board of Medical Examiners, whose lapse is best addressed by the Board and the Medical Association of Georgia.

Contrary to the majority's opinion, the term "issue" fails to give persons of ordinary intelligence fair notice that the conduct at issue in this case is criminalized by OCGA § 16-13-41 (h) and thus renders the statute unconstitutionally vague. The statute is unconstitutional for an additional reason. We have held that statutes are unconstitutionally vague where a defendant's conduct was prosecuted as unlawful based solely upon the consequences that flowed from that conduct and law enforcement officials' view of those consequences. *Hall v. State*, 268 Ga. 89, 93-95 (485 SE2d 755) (1997). While Dr. Raber is not being prosecuted for the precise pre-signed prescription document used to obtain the controlled substance on which Eaton apparently overdosed, it is disingenuous for the majority to claim that the charges against him do not flow exclusively from the consequences of Eaton's lamentable death and the view taken by law enforcement officials of those consequences. The record in this case is uncontroverted that the one prescription pad containing the 33 pre-signed blank prescription documents, i.e., the source of the 33 felony counts against Dr. Raber, was uncovered solely as the result of law enforcement's investigation into Eaton's death. But for her death, no charges would currently be pending against Dr. Raber. I would recognize that, because Dr. Raber would not be facing these charges except for the consequences of his conduct, OCGA § 16-13-41 (h) is unconstitutionally vague for its susceptibility to selective and arbitrary enforcement. See *Hall*, supra.

Physicians in this State know that pre-signing a blank prescription constitutes unprofessional conduct that would authorize the Composite State Board of Medical Examiners to take disciplinary action against them pursuant to Board Rule 360-3-.02 (4). They are likely also aware that a small minority of physicians, in an abuse of the trust placed in them, process prescription documents in various illegal ways, including issuing signed-in-blank prescription forms in order to enable unauthorized persons to obtain controlled substances that could not otherwise be lawfully dispensed. However, what physicians in this State have not previously known, due to the failure in the language in OCGA § 16-13-41 to provide any fair warning, is that it is a felony in violation of the Georgia Controlled Substances Act for a physician to simply hand a signed but blank prescription form to a health care professional on the physician's staff for the purpose of facilitating the delivery of the prescription

form to a patient, the ultimate user, as authorized by the physician.[1] Because I would not construe the language in OCGA § 16-13-41 (h) to encompass such conduct within the statutory prohibition and because I would find the statute unconstitutionally vague, both for failing to provide fair warning to persons of ordinary intelligence and for its susceptibility to arbitrary and selective enforcement, I respectfully dissent to the majority's opinion.

MELTON, Justice, dissenting.

Although I agree with the majority's determination that OCGA § 16-13-41 (h) is not unconstitutionally vague, I do not agree with its definition of the term "issuance" or its assessment of the types of conduct covered by the statute. To the contrary, I believe that the act for which Dr. Raber has been charged in this case, namely giving a signed prescription pad to his nurse, is not covered under OCGA § 16-13-41 (h) by the statute's clear and unambiguous terms. As a result, I must respectfully dissent.

Appellate courts have a duty to construe a statute in a manner which upholds it as constitutional whenever possible. See, e.g., *Garner v. Harrison*, 260 Ga. 866, 869 (2) (400 SE2d 925) (1991). If it is clear what a statute, as a whole, prohibits, that statute is not unconstitutionally vague. *Rozier v. State*, 259 Ga. 399 (383 SE2d 113) (1989). As discussed by Presiding Justice Hunstein in her separate dissent, OCGA § 16-13-41 (h) has a clear meaning supported by the intent of the Legislature. Presiding Justice Hunstein correctly finds that "issuance of a prescription form reflects that the practitioner has given the form to the ultimate user, i.e., the person who has been enabled by the issuance of the form to obtain controlled substances." In light of this clear definition, I believe that persons of common intelligence can ascertain those acts prohibited under the statute, and the statute, therefore, is not unconstitutionally vague. See, e.g., *State v. Old South Amusements, Inc.*, 275 Ga. 274 (1) (564 SE2d 710) (2002) (legislature not required to draft statutes with mathematical precision). Furthermore, based on this clear definition, the acts for which the defendant is presently charged are not covered by the statute, as the prescription form was given to a trusted nurse, not the ultimate user.

I am authorized to state that Chief Justice Sears joins in this dissent.

---

[1] Of course, I would recognize that a physician "issues" a pre-signed, blank prescription form in violation of OCGA § 16-13-41 (h) notwithstanding the fact that the recipient is a member of the physician's staff in those situations where the physician provides such a form for the staff member's personal use or to enable the staff member, in turn, to provide the prescription form to an unauthorized recipient.

DECIDED MARCH 23, 2009 —
RECONSIDERATION DENIED APRIL 10, 2009.

*Pate & Brody, Page A. Pate*, for appellant.
*Thurbert E. Baker, Attorney General, Robert W. Lavender, District Attorney*, for appellee.