301 Ga. 835
FINAL COPY

S17A0962.  HOURIN v. THE STATE.

PETERSON, Justice.

Thomas Robert Hourin appeals the trial court's denial of his pre-trial motions in this criminal case. We granted Hourin's application for interlocutory appeal and directed the parties to address whether this Court has jurisdiction over an application for interlocutory appeal when the certificate of immediate review is signed by a judge different than the judge who signed the order to be appealed.  We answer that question in the affirmative but reject Hourin's arguments that the statutes under which he is charged are unconstitutional.  We also determine that the trial court erred in concluding that officers announcing their presence while simultaneously entering a building was sufficient to satisfy Georgia's knock-and-announce statute.  Because that error was the trial court's basis for denying Hourin's motion to suppress, we vacate that order and remand for consideration of additional issues not decided by the trial court.

Hourin, the non-physician owner of a medical clinic, was charged with

one count of conspiracy to commit the offense of unauthorized distribution and dispensation of controlled substances in violation of OCGA § 16-13-42. Hourin filed a general demurrer and motion to dismiss the indictment, arguing that the indictment violated his due process rights under the United States and Georgia Constitutions. Hourin also filed a motion to suppress evidence obtained as a result of a search of the clinic.

Hourin's motions were handled by one judge, but the certificate of immediate review was signed by another. Pursuant to an order assigning him to handle matters for the Blue Ridge Judicial Circuit from August 22 to September 2, 2016, Superior Court Senior Judge Frank Mills presided over an August 31, 2016, hearing on Hourin's motions. Judge Mills orally denied both the general demurrer and the motion to suppress. He memorialized those decisions in separate orders entered October 3, 2016, stating in each that consideration of Hourin's request for a certificate of immediate review "is reserved for the assigned judge."[1] Judge Mills explained at the hearing that he would leave the certificate of review determination for the assigned judge

---

[1] The parties do not argue, and thus we do not consider, any effect of Judge Mills entering his orders after the expiration of the order assigning him to handle matters for the circuit.

2

because he did not want to "jeopardize [her] calendar." On October 4, Superior Court Judge Ellen McElyea signed a certificate of immediate review as to both orders.

1. We first address the threshold question of our jurisdiction. Neither of the rulings from which Hourin seeks to appeal here — the denial of a general demurrer and the denial of a motion to suppress — is a final judgment or otherwise subject to an immediate appeal under OCGA § 5-6-34 (a). Thus, a certificate of immediate review under the terms of OCGA § 5-6-34 (b) was required.

OCGA § 5-6-34 (b) provides in part:

> Where the trial judge in rendering an order . . . not otherwise subject to direct appeal . . . certifies within ten days of entry thereof that the order . . . is of such importance to the case that immediate review should be had, the Supreme Court or the Court of Appeals may thereupon, in their respective discretions, permit an appeal to be taken . . . .

But Judge McElyea, not Judge Mills (the judge who rendered the orders), signed the certificate of immediate review. Both parties agree that this does not invalidate the certificate of immediate review or deprive us of jurisdiction. Nevertheless, it is incumbent upon this Court to inquire into its own jurisdiction

even when not contested by the parties. See <u>Metro Atlanta Task Force for the</u>

<u>Homeless, Inc. v. Ichthus Cmty. Trust</u>, 298 Ga. 221, 223 (1) (a) (780 SE2d 311)

(2015). We have not previously decided whether a judge who signs a certificate

of review of an order issued by a different judge of the same court nevertheless

constitutes "the trial judge" under the statute. Under the facts of this case, the

answer is yes. Judge McElyea presumably will preside over any trial on this

case. In issuing the underlying orders, Judge Mills essentially was acting in

Judge McElyea's stead as a matter of assisting the court. By the time the

certificate of immediate review had issued, Judge Mills's assignment order had

expired, and Judge McElyea was the judge handling the case when she signed

the certificate. Judge McElyea was "the trial judge" at the time she signed the

certificate of immediate review.[2]

---

[2] The Court of Appeals has held that the same judge who entered the order in question must issue the certificate of immediate review, while allowing for some exceptions. To the extent that the Court of Appeals has suggested that the judge who issued the order in question must be physically unavailable in order for a different judge to sign a valid certificate of immediate review, those decisions are disapproved. See <u>Druid Hills Civic Assn. v. Buckler</u>, 328 Ga. App. 485, 488-489 (1) (760 SE2d 194) (2014) (interlocutory appeal proper where certificate was signed by a judge of the same court "for" the judge handling the case); <u>Freemon v. Dubroca</u>, 177 Ga. App. 745, 745 (1) (341 SE2d 276) (1986) (where trial judge who issued the order was absent during the ten-day period for execution, certificate issued by presiding judge was proper); <u>Tingle v. Harvill</u>, 125 Ga. App. 312, 317-318 (2) (187 SE2d 536) (1972) (presiding judge authorized to enter certificate of immediate review where judge who entered order in question was absent from jurisdiction). We leave for another day issues

4

2. Turning to the merits of Hourin's appeal, he argues that the trial court erred in denying his general demurrer and motion to dismiss. He contends that the indictment should be dismissed for two reasons: (1) the statutes under which he is charged, OCGA § 16-13-41 and OCGA § 16-13-42, are unconstitutionally vague as to whom they apply; and (2) OCGA § 16-13-41 (h) is unconstitutional because it shifts the burden of proof to the defendant. The trial court did not err in rejecting those arguments as a basis for dismissal.

(a) Hourin first argues that OCGA § 16-13-41 and OCGA § 16-13-42 are unconstitutionally vague. We disagree.

Where, as here, First Amendment rights are not implicated, one whose own conduct may constitutionally be proscribed cannot challenge a law on the ground that it might conceivably be applied unconstitutionally to others. See Raber v. State, 285 Ga. 251, 252 (674 SE2d 884) (2009). Therefore a vagueness challenge such as that raised by Hourin must be examined in the light of the facts of this case. Id.

not posed here, such as whether a judge of one court may issue a certificate of immediate review as to an order of another court after the case is transferred. See Mauer v. Parker Fibernet, LLC, 306 Ga. App. 160, 162 (701 SE2d 599) (2010) (certificate of immediate review of order transferring case from one court to another was invalid because it was signed by judge of transferee court).

5

The indictment alleges that Hourin conspired to commit the offense of unauthorized distribution and dispensation of a controlled substance in violation of OCGA § 16-13-42. As the overt act committed in furtherance of this alleged conspiracy, the indictment alleges that Hourin possessed "13 prescriptions that were issued and signed in blank by Dr. Kelvin White, a practitioner and a person who is subject to the requirements of [OCGA §] 16-13-35[,] in violation of [OCGA §] 16-13-41(h)[.]" OCGA § 16-13-42 (a) (1) makes it "unlawful for any person . . . [w]ho is subject to the requirements of Code Section 16-13-35 to distribute or dispense a controlled substance in violation of Code Section 16-13-41[.]" OCGA § 16-13-41 (h) provides:

> It shall be unlawful for any practitioner to issue any prescription document signed in blank. The issuance of such document signed in blank shall be prima-facie evidence of a conspiracy to violate this article. The possession of a prescription document signed in blank by a person other than the person whose signature appears thereon shall be prima-facie evidence of a conspiracy between the possessor and the signer to violate the provisions of this article.

The State does not allege that Hourin is either subject to the requirements of OCGA § 16-13-35[3] or a "practitioner" within the meaning of OCGA § 16-13-41

---

[3] OCGA § 16-13-35 (a) mandates registration with the State Board of Pharmacy by anyone "who manufactures, distributes, or dispenses any controlled substances within this

(h)[4] and in fact appears to concede at least that he is not the latter.

Hourin argues that the statutes under which he is charged are unconstitutionally vague because they do not put him on notice that they apply to a person who is not a "practitioner." But regardless of whether Hourin could be convicted of violating OCGA § 16-13-42 (a) (1) or OCGA § 16-13-41 (h), and regardless of whether the statutes are vague as applied to him, Hourin's argument fails because it rests on the faulty premise that a defendant cannot be

state or who proposes to engage in the manufacture, distribution, or dispensing of any controlled substance within this state[.]" It exempts certain persons from registration and automatically deems registered other persons, such as physicians. OCGA § 16-13-35 (c), (g).

[4] OCGA § 16-13-21 (23) defines practitioner as:

(A) A physician, dentist, pharmacist, podiatrist, scientific investigator, or other person licensed, registered, or otherwise authorized under the laws of this state to distribute, dispense, conduct research with respect to, or administer a controlled substance in the course of professional practice or research in this state;

(B) A pharmacy, hospital, or other institution licensed, registered, or otherwise authorized by law to distribute, dispense, conduct research with respect to, or administer a controlled substance in the course of professional practice or research in this state;

(C) An advanced practice registered nurse acting pursuant to the authority of Code Section 43-34-25. For purposes of this chapter and Code Section 43-34-25, an advanced practice registered nurse is authorized to register with the DEA and appropriate state authorities; or

(D) A physician assistant acting pursuant to the authority of subsection (e.1) of Code Section 43-34-103. For purposes of this chapter and subsection (e.1) of Code Section 43-34-103, a physician assistant is authorized to register with the DEA and appropriate state authorities.

7

convicted of conspiring to commit a particular offense if he could not be convicted of committing the underlying offense. For this proposition, Hourin cites Gonzalez v. Abbott, 262 Ga. 671, 672 (1) (425 SE2d 272) (1993), where we stated, "[a] conspiracy to traffic in cocaine cannot stand if the defendant could not have been convicted for trafficking in cocaine." This imprecise language was not the holding of Gonzalez, however. See Cohens v. Virginia, 19 U. S. 264, 399 (6 Wheat. 264, 5 LE 257) (1821) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision."); Zepp v. Brannen, 283 Ga. 395, 397 (658 SE2d 567) (2008) (following Cohens and disregarding broad legal principle announced in previous case). In Gonzalez, the underlying offense — trafficking in a mixture containing cocaine — had been removed from the Georgia Code altogether. Id. at 672 (1). In other words, the underlying offense was no longer a criminal offense at all. Obviously, conspiring to commit an act that is not a crime is not criminalized by our conspiracy statute, which says that "[a] person commits the offense of

8

conspiracy to commit a crime when he together with one or more persons conspires *to commit any crime* and any one or more of such persons does any overt act to effect the object of the conspiracy." OCGA § 16-4-8 (emphasis supplied).

Here, in contrast, Hourin does not contend that *no one* could be convicted of the underlying offense, just that the statute does not clearly criminalize *his* conduct because he is not a "practitioner." His argument raises the question of what it means to "conspire[ ]" under OCGA § 16-4-8, a term of art with a long tradition of usage in the criminal law. When the legislature uses such a term of art, it presumably adopts the longstanding interpretation of that term unless it says otherwise. See Lathrop v. Deal, 301 Ga. 408, 441 (801 SE2d 867) (2017); see also Salinas v. United States, 522 U. S. 52, 63 (118 SCt 469, 139 LE2d 352) (1997) (presuming Congress used the term "to conspire" in its conventional sense and based on certain well-established principles). A defendant may be said to "conspire" even if he did not intend to commit the underlying offense himself; the government must prove only that the defendant reached an agreement with the intent that the crime be committed by some member of the conspiracy. See Ocasio v. United States, __ U. S. __, __ (136 SCt 1423, 194

9

LE2d 520) (2016); see also Hicks v. State, 295 Ga. 268, 272 (1) (759 SE2d 509) (2014) ("[I]f two or more persons enter into a conspiracy, any act done by any of them pursuant to the agreement is, in contemplation of law, the act of each of them and they are jointly responsible therefor." (citation omitted)). It thus is well established that a defendant may be said to "conspire" even if he is in a class of persons who could not be convicted of the underlying crime. See Ocasio, __ U. S. at __; see also Salinas, 522 U. S. at 64; Gebardi v. United States, 287 U. S. 112, 120-121 (53 SCt 35, 77 LE 206) (1932); United States v. Rabinowich, 238 U. S. 78, 86 (35 SCt 682, 59 LE 1211) (1915); United States v. Holte, 236 U. S. 140, 145 (35 SCt 271, 59 LE 504) (1915). Thus, even if Hourin could not be convicted of violating OCGA § 16-13-42 (a) (1) or OCGA § 16-13-41 (h), he may be prosecuted for conspiring with another to violate those provisions. It therefore does not matter whether the statutes apply directly to someone in Hourin's shoes at all, let alone whether they clearly put Hourin on notice that they do. Hourin does not contend that the statutes were vague as to the doctor with whom he is charged with conspiring. Hourin's vagueness argument fails.

(b) Hourin also argues that OCGA § 16-13-41 (h) is unconstitutional

10

because it relieves the State of its burden to prove the elements of a conspiracy. Again, we disagree.

OCGA § 16-13-41 (h) provides that "possession of a prescription document signed in blank by a person other than the person whose signature appears thereon shall be prima-facie evidence of a conspiracy between the possessor and the signer to violate the provisions of [Article 2]." Hourin argues that under this provision the State may obtain a conviction by showing only that he possessed the signed prescription. The Due Process Clause of the Fourteenth Amendment requires the State to prove beyond a reasonable doubt every element of a charged offense. See Carella v. California, 491 U. S. 263, 265 (109 SCt 2419, 105 LE2d 218) (1989). Jury instructions relieving the State of this burden thereby violate a defendant's due process rights. Id. In considering whether such a violation occurs, we "ask whether the presumption in question is mandatory, that is, whether the specific instruction, both alone and in the context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if the State proves certain predicate facts." Id. Merely permissive phrases, such as "intent may be inferred," "it is reasonable to infer," or "you may draw the inference that" are not mandatory,

11

and so use of such phrases in a jury instruction does not amount to a due process violation as long as the permitted inference is rational. See Isaacs v. State, 259 Ga. 717, 734-736 (35) (b) (386 SE2d 316) (1989).

We have reversed a defendant's conviction where the jury was instructed with the same language found in the statute at issue here. In that case, the jury was instructed that possession of two or more financial transactions cards in the name of persons other than immediate family members or without the consent of the card holders "shall be prima facie evidence" that the cards were obtained in violation of OCGA § 16-9-31 (a). See Mohamed v. State, 276 Ga. 706, 707-709 (1) (583 SE2d 9) (2003) (quoting the statute). The language "shall be prima facie evidence" does not itself require a certain inference, because "prima facie evidence" is merely "such evidence as in judgment of law is sufficient, and if not rebutted remains sufficient." Republic Truck Sales Corp. v. Padgett, 30 Ga. App. 474, 475 (12) (118 SE 435) (1923). That evidence may be sufficient to support a given conclusion certainly does not mean that the evidence mandates such a conclusion. But it makes sense that we found the reading of the "shall be prima facie evidence" language to the Mohamed jury, without further

12

explanation,[5] violated the defendant's rights, as jurors not versed in the meaning of certain legal terms of art might conclude that the language mandated a presumption — i.e., that they must convict if they find the defendant possessed two or more financial transactions cards in the name of persons other than immediate family members or without the consent of the card holders, even if the government did not prove, for instance, intent or knowledge elements found in certain subsections of OCGA § 16-9-31 (a).[6]

But it is only when jurors are given an instruction that reasonably can be

[5] In Mohamed, we noted that while the jury was instructed that the State must prove the elements of the crime charged in the accusation, which alleged that the appellant unlawfully and knowingly withheld the cards from the victim, the trial court did not give three separate instructions requested by the defense to the effect that the State must prove beyond a reasonable doubt that the appellant deliberately withheld the victim's credit cards from her. 276 Ga. at 710-711 (4). Other than a reference to an instruction on failure to reach unanimity, id. at 711 (5), our opinion contains no further information about instructions given to the jury in that case.

[6] Another case relied on by Hourin, Sherrod v. State, 280 Ga. 275 (627 SE2d 36) (2006), did not involve jury instructions but nonetheless presented the issue in the post-conviction context. Therein we reversed the defendant's conviction at a bench trial in which the trial judge rejected the defendant's constitutional challenge to a statute that provided that a person who possesses personal property by virtue of a lease and fails to return the property within five days of a demand letter "shall be presumed" to have knowingly converted the property. Notwithstanding the defendant's pre-trial challenge to the statute itself, we reversed the conviction based on our conclusion that "the trial court, as factfinder, applied the presumption in this case[,]" having "considered itself bound by the mandatory language" of the statute. Id. at 277 n.2. Moreover, the mandatory phrase "shall be presumed" is less supportive of a permissive jury instruction than the statutory language at issue in this case.

13

understood to impose an impermissibly mandatory presumption of guilt that a defendant's due process rights are violated. In State v. Hudson, 247 Ga. 36 (273 SE2d 616) (1981), we held that it was error for a trial court to sustain a plea in bar on the basis that the statute under which the defendant was indicted amounted to impermissible burden-shifting. Id. at 38 (2). That statute, using the same statutory language at issue here and in Mohamed, provided that a failure to pay for material or labor furnished for certain property improvements "shall be prima facie evidence" of intent to defraud. Id. at 37. But unlike in Mohamed, the procedural posture of that case was such that no trial had been had. We found that distinction dispositive:

> [T]he presumption in the statute in question here might be constitutionally valid or invalid depending on the instructions given to the jurors by the court. If the presumption indicated by the statute could be interpreted by the jury under the court's instructions as a burden shifting presumption or as a conclusive presumption, either interpretation would deprive the defendant of his right to have the state prove every element of the crime with which he is charged beyond a reasonable doubt. Under those circumstances, the instructions would render the presumption unconstitutional. On the other hand, if the instructions made clear to the jury that the presumption raised by the statute was permissive only, and that the duty still devolved upon the state to prove every element of the crime charged beyond a reasonable doubt, the presumption permitted by the statute would be constitutionally permissible.

14

Id. at 38 (2) (citation omitted).

Like Hudson, this case involves a pre-trial challenge to a statute. As explained above, the statute at issue may support instructions that make clear to the jury that the presumption the statute provides for is permissive only — a defendant's possession of a prescription document signed in blank by a person other than the person whose signature appears therein permits an inference that the possessor and the signer conspired to violate Article 2 of the Criminal Code. And a jury can be told as much using acceptable phrases such as "it is reasonable to infer" or "you may draw the inference that." See Isaacs, 259 Ga. at 736 (35) (b). On this record and in this procedural posture, therefore, we affirm the trial court's denial of Hourin's general demurrer and motion to dismiss.

3. Finally, Hourin argues that the trial court erred in denying his motion to suppress the evidence seized in a search of the clinic. He offers two bases for that argument: (1) the warrant pursuant to which the search was conducted was overly broad and authorized a general exploratory search of a medical practice; and (2) the warrant was executed illegally because officers failed to knock and announce their presence prior to commencing the search as required by OCGA

§ 17-5-27. We agree that the trial court erred in its application of OCGA § 17-5-27.

"Unless clearly erroneous, the trial court's ruling on disputed facts and credibility at a suppression hearing must be accepted on appeal." State v. Davis, 261 Ga. 225, 226 (404 SE2d 100) (1991) (citation and punctuation omitted). "However, where controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo." Sosniak v. State, 287 Ga. 279, 280 (1) (695 SE2d 604) (2010) (citation and punctuation omitted). The search was conducted pursuant to a search warrant that authorized the seizure of records related to the treatment of several dozen named patients, as well as financial and other records of the business. At the motions hearing, an agent with the Cherokee County Sheriff's Office testified that the search warrant was executed at the clinic during normal business hours. The agent testified that, upon his arrival, he approached the receptionist and informed her that the agents had a search warrant for the business. At the same time, he testified, the other agents proceeded to the back area of the facility, where the exam rooms were, to secure Hourin and two others (one of whom, it turned out, was not present at that time). On cross-examination, the agent testified:

16

Q:  So they were already in the back by the time you were at the window, correct?  You're . . . second in line, right?
A:  Correct.

At the hearing, the defense also presented surveillance video showing the agents' execution of the warrant.  This video showed the agent presenting the warrant to the receptionist at the same time as other agents entered the back part of the building.

Rejecting Hourin's knock-and-announce argument, the trial court found that one officer approached the receptionist and gave her a copy of the search warrant at the same time that others began securing and searching the premises.  The trial court held that this simultaneous action did not violate the knock-and-announce requirements of Georgia law and denied the motion to suppress.  The trial court also found that the affidavit in support of the search warrant provided sufficient facts to establish probable cause to search the clinic.

(a) The State contends that Hourin waived his arguments regarding the improper execution and the overly broad nature of the search warrant by failing to raise those arguments in his motion to suppress.  But, putting aside whether these issues were properly raised in Hourin's written motion to suppress, Hourin did raise them at the motions hearing, and the State did not then object on lack

17

of notice. The State cannot complain about lack of notice for the first time here.

(b) Hourin contends that the warrant was illegal as issued because the authorization given was overbroad. We disagree.

"[A] search conducted pursuant to a search warrant, regular and proper on its face, is presumed to be valid and the burden is on the person who moves to suppress the items found to show that the search warrant was invalid." State v. Slaughter, 252 Ga. 435, 437 (315 SE2d 865) (1984). "In evaluating the particularity of a warrant's description, we must determine whether the description is sufficient to enable a prudent officer executing the warrant to locate it definitely and with reasonable certainty." Fair v. State, 284 Ga. 165, 170 (3) (a) (664 SE2d 227) (2008) (citation and punctuation omitted). "[T]he degree of the description's specificity is flexible and will vary with the circumstances involved." Id. (citation and punctuation omitted).

The warrant limited many of the records to be seized to those pertaining to a list of particular patients provided to the attesting agent by a medical assistant with the clinic, who said these patients had been seen by a nurse practitioner using an otherwise blank prescription pad pre-signed by a doctor. Certain documents listed, such as "financial documents," although not limited

18

to the care of certain patients, were limited by the clause "related to patient care and medical payments." Other business records, such as sign-in sheets, were specifically described. The authority of the officers to search for the records in question was sufficiently limited. See Smith v. State, 274 Ga. App. 106, 110 (3) (616 SE2d 868) (2005) (finding sufficient "warrant's general description" of items evidencing child molestation and sexual exploitation of children).[7]

(c) Hourin argues that the search warrant was illegally executed because the officers did not comply with Georgia's statutory requirements that officers knock and announce their presence before forcibly entering a building. The trial court concluded that an announcement simultaneous with entry satisfied the statute. Because the statute requires the announcement to precede entry, this conclusion was error. We remand for consideration of the State's arguments that the entry was not forcible and exigent circumstances were present.

OCGA § 17-5-27 provides:

---

[7] Hourin relies on Grant v. State, 220 Ga. App. 604 (469 SE2d 826) (1996), in which the Court of Appeals determined that a warrant was overly broad because it did not limit the items to be seized to those involving certain named persons and thus gave the executing officers too much discretion. See id. at 609 (2). This case is not like Grant, however, as the patient records to be seized here were limited to a list of named patients. The other objects of the warrant had sufficient other qualifiers.

19

All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to execute a search warrant if, after verbal notice or an attempt in good faith to give verbal notice by the officer directed to execute the same of his authority and purpose:

(1) He is refused admittance;

(2) The person or persons within the building or property or part thereof refuse to acknowledge and answer the verbal notice or the presence of the person or persons therein is unknown to the officer; or

(3) The building or property or part thereof is not then occupied by any person.[8]

Here the trial court found that officers entered the back part of the office through a closed door in the waiting room at the same time that another officer approached the receptionist and showed her the warrant. The trial court's finding that these events occurred simultaneously is consistent with video evidence. But even under that factual finding, the agent's approach to the

---

[8] OCGA § 17-5-30 (a) (2) provides that "[a] defendant aggrieved by an unlawful search and seizure may move the court . . . to suppress as evidence anything so obtained on the grounds that . . . the warrant was illegally executed." We note that the United States Supreme Court has held that a violation of the federal knock-and-announce rule — at least the version of the rule arising under the Fourth Amendment — does not demand exclusion of evidence. See Hudson v. Michigan, 547 U. S. 586, 599 (126 SCt 2159, 165 LE2d 56) (2006); see also United States v. Acosta, 502 F3d 54, 61 (2d Cir. 2007) (exclusionary rule inapplicable to violations of statutory federal knock-and-announce rule), cert. denied, 552 U. S. 1154 (128 SCt 1097, 169 LE2d 831) (2008); United States v. Bruno, 487 F3d 304, 306 (5th Cir. 2007) (same), cert. denied, 552 U. S. 936 (128 SCt 336, 169 LE2d 235) (2007); United States v. Southerland, 466 F3d 1083, 1085-1086 (D.C. Cir. 2006) (same), cert. denied, 549 U. S. 1241 (127 SCt 1361, 167 LE2d 137) (2007).

receptionist would not satisfy the prerequisite to the use of force set forth in the statute because the officers did not allow any time at all for a response before entering the back portion of the building. The plain text of OCGA § 17-5-27 requires an officer to announce his or her presence (or make a good faith effort to do so) and wait for some sort of response *before* the officer uses force to effect an entry into a building or part of a building. See OCGA § 17-5-27 ("All necessary and reasonable force may be used to effect an entry into any building . . . or part thereof to execute a search warrant if, after verbal notice or an attempt in good faith to give verbal notice . . ."); see also State v. Cash, 316 Ga. App. 324, 326 (728 SE2d 918) (2012). The trial court concluded that an announcement simultaneous with entry satisfied this statutory requirement. That was error.

But the trial court's ruling meant that it did not consider other issues raised by Hourin's motion and the State's response. First of all, OCGA § 17-5-27 applies only when officers use some "force." At the motions hearing, the State contended that the officers entered the clinic "very peacefully, very calmly," and the State argues on appeal that the officers used "no force whatsoever" in entering the back of the building. Our Court of Appeals has

suggested that opening an unlocked door may constitute force within the meaning of OCGA § 17-5-27. See State v. Smith, 219 Ga. App. 905, 905 (467 SE2d 221) (1996) (trial court was authorized to conclude that officers' entry into the residence via unlocked door was illegal under OCGA § 17-5-27 because they did not first announce their authority and purpose). But we appear not to have answered that question definitively ourselves. Although the execution of the warrant was captured in part by video, the video does not show all aspects of the officers' actions, and so we leave it to the trial court to answer in the first instance whether the officers' actions here constituted force so as to trigger the statute.[9]

---

[9] The trial court might also consider whether OCGA § 17-5-27 fully displaced the common law rule. The text of OCGA § 17-5-27 is permissive, not exclusive. See OCGA § 17-5-27 ("force may be used . . . if[,]" not "no force may be used unless"). A motion to suppress filed under OCGA § 17-5-30 challenging execution must show that a "search and seizure with a warrant was illegal because . . . the warrant was illegally executed." OCGA § 17-5-30 (a) (2). Merely failing to comply with a permissive statute regarding execution does not necessarily render that execution illegal; rather, a consideration of the applicable background law might then be necessary. Georgia adopted the common law of England except to the extent that Georgia's statutory or constitutional law displaced it. See OCGA § 1-1-10 (c) (1) ("The following specific laws and parts of laws are not repealed by the adoption of this Code and shall remain of full force and effect, pursuant to their terms, until otherwise repealed, amended, superseded, or declared invalid or unconstitutional: (1) An Act for reviving and enforcing certain laws therein mentioned and adopting the common laws of England as they existed on May 14, 1776, approved February 25, 1784."); see also Lathrop, 301 Ga. at 412 (II) (A) n.9. There is some authority that the common law of England required an officer to comply with knock-and-announce procedures before opening an unlocked door — although perhaps only when entering a "dwelling." See Sabbath v. United

22

The trial court's ruling also meant that it did not consider the State's argument that exigent circumstances excused compliance with OCGA § 17-5-27. We have held that exigent circumstances may obviate the need to comply with the knock-and-announce procedure. See, e.g., Fair, 284 Ga. at 172-173 (3) (c); Anderson v. State, 249 Ga. 132, 136 (5) (287 SE2d 195) (1982).[10] At the motions hearing, the State introduced testimony that the lead detective had several concerns about executing the search warrant. The detective testified to the possibility of "armed guards," "a plethora of patients," and "easily destroyed" paper evidence at the clinic. The State subsequently noted that OCGA § 17-5-28 (2) allows officers executing a search warrant to detain or search persons on the property to prevent the disposal of items described in the

States, 391 U. S. 585, 589-590 (88 SCt 1755, 20 LE2d 828) (1968) (construing federal statute as drawn from common law rule; "An unannounced intrusion into a dwelling . . . is no less an unannounced intrusion whether officers break down the door, force open a chain lock on a partially open door, open a locked door by use of a passkey, or, as here, open a closed but unlocked door.").

[10] The origin of this exception is unclear; the text of OCGA § 17-5-27 does not seem to contemplate it. It may be drawn from the common law knock-and-announce rule. See Sabbath, 391 U. S. at 591 n.8 ("Exceptions to any possible constitutional rule relating to announcement and entry have been recognized, and there is little reason why those limited exceptions might not also apply to [the federal knock-and-announce statute], *since they existed at common law*, of which the statute is a codification." (citation omitted; emphasis supplied)); see also Scull v. State, 122 Ga. App. 696, 698-699 (1) (178 SE2d 720) (1970). We are not called upon here to reconsider Fair or Anderson, however, and so we do not do so.

23

warrant and pointed to the agent's testimony that he was concerned about the destruction of documents. In making these statements, the State put at issue the exigent circumstances exception to OCGA § 17-5-27. "Whether these circumstances exist is a question of fact to be determined by the trial court[.]" Jackson v. State, 280 Ga. App. 716, 718 (1) (634 SE2d 846) (2006). This issue was not ruled upon by the trial judge. For these reasons, we vacate the trial court's denial of the motion to suppress and remand for consideration of the remaining issues raised by Hourin's motion.

Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur, except Melton, P. J., not participating.

Decided August 28, 2017.

OCGA §§ 16-13-41, 16-13-42; constitutional question. Cherokee Superior Court. Before Judge McElyea.

Amanda G. Speights; Gregory A. Hicks, for appellant.

Shannon G. Wallace, District Attorney, Cliff Head, William J. Hunter, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.