**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**January 27, 2023**

# In the Court of Appeals of Georgia

A22A1448. UNDERWOOD v. THE STATE.

LAND, Judge.

On appeal from her conviction for trafficking in methamphetamine and possession of tools for the commission of a crime, Tracie Underwood argues that the trial court erred when it denied her motion to suppress evidence of the crimes because police entered her house only a few seconds after announcing their presence. We find no error and affirm.

We note the "three fundamental principles which must be followed when conducting appellate review" of a ruling on a motion to suppress:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any

evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

*Miller v. State*, 288 Ga. 286, 286-287 (1) (702 SE2d 888) (2010). In reviewing a trial court's decision on a motion to suppress, we consider "all relevant evidence of record, including evidence introduced at trial, as well as evidence introduced at the motion to suppress hearing." (Footnote, punctuation and emphasis omitted.) *Pittman v. State*, 286 Ga. App. 415, 416 (650 SE2d 302) (2007).

Although we would construe the record in favor of the trial court's judgment, the relevant facts are not in dispute. In January 2016, an investigator with the Jackson County Sheriff's Office submitted an affidavit in support of a search warrant for a residence at 123 Hawks Ridge Road in Nicholson. The affidavit stated that a confidential informant wearing a wire had purchased methamphetamine from Underwood at this address, that she lived there, and that she had previously been convicted of possessing methamphetamine. The magistrate signed the warrant, and police executed it a few days later.

As the house's own surveillance cameras recorded the scene, the officers knocked on the door of the residence and announced their presence and purpose, saying, "Sheriff's Office, search warrant." After hearing a shuffling of feet as they continued to knock on the door, the officers opened the unlocked door and saw Underwood sitting on a couch a few feet inside. The lapse of time between the first knock and the entry was not more than three seconds.[1]

Once inside, the officers also found two men – one in the hallway, and one in a back bedroom holding a putty knife and a spatula. After detaining the men, police found methamphetamine on the table in the room where Underwood was found sitting and in other areas of the house. Near the largest quantity of the drug, which was in bags on a dresser in the master bathroom, police also found a box of sandwich bags, a propane torch, and a cigarette pack containing a folded $20 bill that later tested positive for methamphetamine. Mail addressed to Underwood and her Georgia driver's license were also on the dresser, and cut methamphetamine was laid out on

---

[1] We cannot agree with the dissent's assertion that the video recording contradicts this account. The recording consists of a video of a computer monitor playing another recording with virtually no sound and taken from the side of the house, with the front door itself not in view. The questions of fact raised by the video – in particular, what the officers heard before entering – were for the trial court to resolve, and the dissent's own account confirms what the parties have never disputed: that three seconds elapsed between first knock and entry.

a mirror inside a cabinet in the same bathroom. The total weight of the drug found in the house was later determined to be over 370 grams. Police also found a live security system with a chime that would sound whenever a vehicle pulled into the driveway and a television showing a video feed from the seven different cameras on the property. No firearms were found.

Underwood moved to suppress the evidence recovered from her house on grounds including that the police entry had violated OCGA § 17-5-27, which provides:

> *All necessary and reasonable force may be used to effect an entry* into any building or property or part thereof *to execute a search warrant if, after verbal notice* or an attempt in good faith to give verbal notice by the officer directed to execute the same of his authority and purpose: (1) *[h]e is refused admittance;* (2) *[t]he person or persons within the building or property or part thereof refuse to acknowledge and answer the verbal notice* or the presence of the person or persons therein is unknown to the officer; or (3) [t]he building or property or part thereof is not then occupied by any person.

(Emphasis supplied.) After hearing evidence and argument, the trial court denied the motion on the ground that the entry complied with the statute, being "nonforceful," made after police announced their presence, and pursuant to a warrant. In doing so,

4

the trial court cited our decision in *Swan v. State*, 257 Ga. App. 704 (572 SE2d 64) (2002), where we held that police's non-forcible entry made "three to five seconds" after announcing their presence was legal because it was "not manifestly unreasonable." Id. at 706 (3), citing *Felix v. State*, 241 Ga. App. 323, 325 (4) (526 SE2d 637) (1999) (a five- to ten-second interval between announcement and non-forcible entry was reasonable and thus legal).

Although the trial court granted a certificate of immediate review, both this Court and the Supreme Court of Georgia denied Underwood's petitions for interlocutory review. A jury later found Underwood guilty of trafficking in methamphetamine and possession of tools to distribute the drug (in the form of plastic bags and surveillance equipment). She was convicted and sentenced to 30 years with 20 to serve. Her motion for new trial was denied.

On this direct appeal, Underwood's sole contention is that police's entry to her house violated OCGA § 17-5-27. We disagree.

The State concedes that subsection (3) of the statute, concerning unoccupied properties, does not apply here, and Underwood does not contest the validity of the search warrant itself. The only question, then, is whether police were authorized to

enter the house three seconds after giving "verbal notice" to the occupants. OCGA § 17-5-27 (1), (2).

"A law enforcement officer entering an occupied residence for the purpose of executing a search warrant is required to give or attempt to give verbal notice of his authority and purpose." (Citation and punctuation omitted.) *Swan*, 257 Ga. App. at 706 (3). It is undisputed that after announcing their presence, the officers heard "shuffling" inside rather than any verbal response, and we held in *Swan* that a three- to five-second lapse between announcement and entry complied with OCGA § 17-5-27 (1) and (2). 257 Ga. App. at 760 (3).

With the benefit of hindsight, Underwood implies that the absence of firearms at this particular location rendered the situation less dangerous such that a rapid response to the occupants' apparent "refus[al] to acknowledge and answer the verbal notice" was unreasonable. See OCGA § 17-5-27 (2). But the only relevant inquiry is whether, at the moment they entered the house, police might have reasonably expected to encounter firearms or other resistance to the search and its purpose, including the destruction of contraband, such that their decision to delay entry for only a short time was reasonable. See *Swan*, 257 Ga. App. at 66 (3) (a "three- to five-second interval was sufficient, particularly in light of the judicially recognized fact

that firearms are tools of the drug trade") (citation and punctuation omitted); *State v. Jourdan*, 264 Ga. App. 118, 122 (2) (589 SE2d 682) (2003) (the "touchstone of the Fourth Amendment is reasonableness," which "is measured in objective terms by examining the totality of the circumstances"). Because we believe that these officers' decision to enter this drug house only three seconds after knocking was objectively reasonable, we affirm. *Swan*, 257 Ga. App. at 760 (3). Compare *State v. Lopez-Chavez*, 330 Ga. App. 644, 649 (2) (768 SE2d 816) (2015) (officers' generalized suspicion that firearms might be found at a drug dealers' house was insufficient to justify a no-knock warrant).[2]

*Judgment affirmed. Gobeil, J. fully and specially concurs. McFadden, P.J., dissents.*

---

[2] In so concluding, we also reject Underwood's request that we overrule *Swan*, which is precedent of 20 years' standing and has never been questioned by this or any other Georgia court.

7

A22A1448.  UNDERWOOD v. THE STATE.

GOBEIL, Judge, concurring fully and specially.

I fully concur in the majority opinion, but write separately to highlight additional points relevant to my analysis of the case. First, under OCGA § 17-5-27, the options to effect entry are triggered by "verbal notice or an attempt in good faith to give verbal notice," not necessarily by knocking. Here, the videotape does not reveal precisely when the officers announced themselves in relation to the knock and entry. But, regardless of whether the interval between verbal notice and entry was two seconds, three seconds, or possibly even longer, the result is the same. Here, there is no question that the officers had a search warrant, they provided verbal notice, they heard shuffling (from which they might reasonably have inferred that the occupants

2

were aware of their presence and might reasonably have expected that the occupants were concealing evidence or arming themselves), and there was at least a two to three second interval following such notice. Given the combination of these facts, I do not find that one less second (assuming for the sake of argument that the dissent is correct that only two seconds lapsed between notice and entry) renders the officers' short delay before entry unreasonable.

A22A1448. UNDERWOOD v. THE STATE.


MCFADDEN, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion. I believe the evidence shows

that the officers illegally executed the search warrant for Underwood's home by

violating the requirements of OCGA § 17-5-27 before entering the home. So I would

reverse the trial court's denial of the motion to suppress the evidence seized from the

house after that unlawful entry.

"OCGA § 17-5-27 requires a law enforcement officer entering an occupied residence for the purpose of executing a search warrant to give or attempt to give verbal notice of his authority and purpose, and it permits a forceful entry if the person inside either refuses to admit him or refuses to acknowledge and answer the verbal notice." *Hughes v. State*, ___ Ga. App. ___ (Case No. A22A1428, decided January 4, 2023).

The statutory language is "refused admittance" and "refuse to acknowledge." OCGA § 17-5-27 (1), (2). Accordingly, our Supreme Court has explained that after giving the verbal notice required by OCGA § 17-5-27, the officer must "wait for some sort of response before the officer uses force to effect an entry into a building or part of a building." *Hourin v. State*, 301 Ga. 835, 845-846 (3) (c) (804 SE2d 388) (2017). The evidence in the instant case, including a video recording, shows that the officer who gave the notice required by OCGA § 17-5-27 failed to wait for a response before entering the house.

In the "Findings of Facts" section of his order denying a new trial, the trial court found, "Before entering, the officers knocked on the residence door and announced their presence. Officers heard no response and three to five seconds later they opened the unlocked door to the residence and entered." But in the "Conclusion"

2

section of his order, the trial court made the somewhat different finding that the officers "knocked and announced their presence and then waited three seconds for a response before opening an unlocked door and entering the residence." Because the controlling "facts are discernible from a videotape, our review is de novo." *Hourin*, supra at 843 (3) (citation and punctuation omitted). And under that standard, neither finding is sustainable.

The majority is right in saying "that three seconds elapsed between first knock and entry." But that is not the same thing as waiting three seconds or a three-second interval. The video, which includes a timer, shows that the officer began knocking at the 26 seconds mark and stopped at the 27 seconds mark. Then at the 29 seconds mark, he entered the house followed by six other officers. So the videotape establishes that the officers waited two seconds.

The trial court and the majority rely on a case in which we held "that [a] three-to five-second *interval* was sufficient[.]" *Swan v. State*, 257 Ga. App. 704, 706 (3) (572 SE2d 64)(2002) (emphasis added). *Swan* relied in turn upon *Felix v. State*, 241 Ga. App. 323, 326 (526 SE2d 637) (1999), in which we found that a "five-to-ten-second *interval* . . . was not manifestly unreasonable." (emphasis added)

Now the majority would go down to a two-second interval. That is a bridge too far. The statute speaks of refusal. OCGA § 17-5-27 (1), (2). This was the defendant's home. Someone who does not respond within two seconds to a knock at the front door of their home has not refused admittance.

And while the short intervals in *Swan* and *Felix* may have been authorized by the evidence in those cases, they do not control our decision today. Here, the video of the incident makes it abundantly clear that the officers' conduct was not reasonable and did not comply with statutory mandate that they wait for a response — either an express refusal to admit them or a refusal to answer the notice — before entering the house.

As the majority correctly notes, reasonableness is the touchstone of the Fourth Amendment. And it is apparent from the video that the officer made no reasonable attempt to wait for a response from anyone inside the house before he entered it. Indeed, when asked at the suppression hearing if he waited for anyone to come to the door, the officer responded, "No."

In *Hourin*, supra at 846 (3) (c), the Supreme Court held that the requirements of OCGA § 17-5-27 were not satisfied by officers' simultaneous announcement and entry into a building. While the announcement and entry in this case were not

4

simultaneous, they were virtually so. The slight pause between them, as shown on the video recording, did not satisfy the requirement that the officers wait for either a refusal to admit them or a refusal to acknowledge the verbal notice prior to making a forceful entry.

Nor can the officers' conduct be justified on the basis of exigent circumstances. "Exigent circumstances exist where the police have 'reasonable grounds to believe that forewarning would either greatly increase their peril or lead to the immediate destruction of the evidence.'" *Poole v. State*, 266 Ga. App. 113, 115 (1) (596 SE2d 420) (2004), citing *State v. Smith*, 219 Ga. App. 905, 906 (467 SE2d 221) (1996). Our analysis in *Poole* relied in part on Fourth Amendment analysis by the United States Supreme Court in *Richards v. Wisconsin*, 520 U.S. 385 (117 SCt. 1416, 137 LE2d 615) (1997). Id. at 116 (1).

We cannot uphold the trial court's additional finding that "the officers were further justified in their hurried entry" because a surveillance system and driveway alert system at the house could have alerted people inside the residence to the officers' approach. This court recently held that such a surveillance system alone does not amount to the exigent circumstances needed to authorize a no-knock provision in a search warrant. *Hughes*, supra. As we explained in that case, an officer's non-

compliance with "the notice requirement of [OCGA § 17-5-27 is] not excused by the mere fact that someone in the residence may have discovered the presence of officers approaching to execute [a] search warrant." Id. at ___. Indeed,

> [t]o find exigent circumstances in [such a] case would amount to the adoption of a per se rule that once law enforcement officers realize that an occupant of the premises to be searched for drugs has discovered the officers' presence outside the premises, the notice requirement is excused. In striking an appropriate balance between the legitimate law enforcement concerns and the individual privacy interest affected by a forceful entry, we reject the use of such a blanket exception. Because no exigent circumstances excused the officers' failure to comply with OCGA § 17-5-27, the trial court erred in denying [Underwood's] motion to suppress [on this additional basis].

*Poole v. State*, supra at 119 (1).

Nor can the officers' conduct be justified on the basis of the lead officer's testimony that, "I heard some shuffling inside — shuffling of feet, I would assume." That is not evidence of exigent circumstances. The officer did not elaborate, either about when he heard those sounds or about what inferences — beyond shuffling of feet — he drew from them. And the trial court did not rely on that testimony. For this court to infer exigent circumstances from that testimony would be to indulge in speculation.

6

For those reasons, I would reverse the trial court's erroneous denial of the motion to suppress.