## 40267. THE STATE v. MULKEY.

BELL, Justice.

Lucille Mulkey appealed her conviction for arson, enumerating as error the admission of oral testimony by a fire safety specialist describing ignition tests which the expert conducted several years prior to the date of the alleged crime. The Court of Appeals reversed, holding in the fourth division of its opinion that the state violated OCGA § 17-7-211 (Code Ann. § 27-1303) by failing to provide the defendant with a written report of the tests at least ten days before trial. *Mulkey v. State,* 167 Ga. App. 627 (4) (307 SE2d 117) (1983). We granted certiorari to consider whether these tests were subject to the disclosure requirements of § 17-7-211 (Code Ann. § 27-1303). We hold that they do not fall within the ambit of that statute, and that the judgment of the Court of Appeals must be reversed.

In the course of determining whether Mulkey's discovery rights were violated the Court of Appeals considered two issues, resolving both in the appellant's favor. One issue was whether "the fact that no written report was offered by the state in this case . . . ," exempted the tests from § 17-7-211 (Code Ann. § 27-1303), and the second issue concerned whether the mandate of § 17-7-211 (Code Ann. § 27-1303) extends beyond "scientific tests of material directly involved in the crime charged," to include "*any* evidence of a scientific test offered by the state in its case-in-chief or in rebuttal. . . ." *Mulkey,* supra at 630.

1). As to the first issue, we note that *Mulkey* was decided prior to our decision in *Law v. State,* 251 Ga. 525 (2) (307 SE2d 904) (1983), in which we held that "if there is no writing, there is nothing to which the statute [§ 17-7-211 (Code Ann. § 27-1303)] attaches." Id. at 528.

Accord, *Williams v. State,* 251 Ga. 749 (3) (a) (310 SE2d 528) (1983). Our own review of the *Mulkey* record not only confirms the Court of Appeals' finding that no written report was offered into evidence, but further reveals no evidence that such a report exists, and, applying the rule of *Law,* we conclude that the trial court did not err by admitting the expert testimony.

2). The second issue considered by the Court of Appeals — what classes of tests are discoverable pursuant to the statute — is, however, one of first impression. In its opinion the Court of Appeals stated that "[t]he clear language of the statute provides that *any* evidence of a scientific test offered by the state in its case-in-chief or in rebuttal is subject to discovery with the accompanying sanction of non-use for failure timely to release the evidence known to the state. We will not invest such clear language with the meaning that it involves only scientific tests of material directly involved in the crime charged." 167 Ga. App. supra at 630.

We disagree with the court's interpretation of this statute. The language of the Code provides for discovery of "any written scientific reports . . . which will be introduced in whole or in part against the defendant by the prosecution. . . ." § 17-7-211 (b) (Code Ann. § 27-1303). The central issue, then, is whether the term "any written scientific reports" includes, as was held by the Court of Appeals, "any evidence of a scientific test offered by the state," or whether, instead, the legislature intended it to have a more narrow scope. In determining this question, "our touchstone is of course the intent of the General Assembly." *Tabb v. State,* 250 Ga. 317, 318 (297 SE2d 227) (1982). "Our inquiry begins with the language of the statute itself. Generally, where the language used by the legislature is plain and unambiguous, judicial construction is unnecessary. [Cit.] But where, as here, the words of the statute are inherently ambiguous, our task is to 'look diligently for the intent of the General Assembly.' [Cit.]" Id.

Section 17-7-211 (a) (Code Ann. § 27-1303) defines the term "written scientific reports" as a phrase which "includes, but is not limited to, reports from the Division of Forensic Sciences of the Georgia Bureau of Investigation; autopsy report by the coroner of a county or by a private pathologist; blood alcohol test results done by a law enforcement agency or a private physician; *and similar type reports* that would be used as scientific evidence by the prosecution in its case-in-chief or in rebuttal against the defendant." (Emphasis supplied.) Although this wording is somewhat ambiguous, in that the subsection's use of the term "and similar type reports" has the effect of leaving the definition of "written scientific report" open-ended, we nevertheless have no difficulty in ascertaining the meaning of the

General Assembly.

"It is a well-recognized rule of construction that when a statute or document enumerates by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis with the things specifically named, unless, of course, there is something to show that a wider sense was intended." *Beavers v. LeSueur,* 188 Ga. 393 (3) (3 SE2d 667) (1939). Accord, *Independent Ins. Agents v. Dept. of Banking,* 248 Ga. 787 (285 SE2d 535) (1982); *Board of Chiropractic Examiners v. Ball,* 224 Ga. 85 (1) (160 SE2d 340) (1968). Examining § 17-7-211 (Code Ann. § 27-1303), it is clear that the reports enumerated in subsection (a) are tests which generally are carried out during the course of the investigation of a crime. See generally, OCGA § 35-3-4 (Code Ann. § 92A-302) (e.g., "(a) It shall be the duty of the [Georgia Bureau of Investigation] to:. . . (4) Provide for the scientific investigation of articles used in committing crimes or articles, fingerprints, or bloodstains found at the scenes of crimes. . . ."); *Meminger v. State,* 160 Ga. App. 509 (6) (287 SE2d 296) (1981) (analysis of hair and blood specimens from the defendant's clothing), rev'd on other grounds, 249 Ga. 561 (292 SE2d 681) (1982); *Tanner v. State,* 160 Ga. App. 266 (1) (287 SE2d 268) (1981) (autopsy of victim). In contrast, the ignition tests in this case did not originate in the state's investigation and preparation for trial, and merely constituted a portion of the body of scientific experience, training, and knowledge which the fire safety specialist brought to the stand in his capacity as an expert, i.e., his expert qualifications. Therefore, because the ignition tests were not of like character to the class of tests specified in § 17-7-211 (a) (Code Ann. § 27-1303), and because nothing else in the statute indicates that the General Assembly intended a broader sense, we conclude that the ignition tests, even had they been reduced to writing, were not discoverable.

There remains, however, an additional question of interpretation. The state argues that, in addition to the foregoing limit on the pre-trial availability of scientific reports, the statute should be construed as requiring discovery of reports only if the tests described in the reports were conducted upon tangible evidence directly connected with the crime, that is, evidence which was collected from defendants, victims, or crime scenes. Under this interpretation, even if the fire safety specialist who testified during Mulkey's trial had performed his comparison tests during the course of the investigation of the fires which occurred at Mulkey's place of business, and even if the tests had been reduced to written reports, the reports nevertheless would not have been discoverable, since they would have been performed with mattresses wholly unconnected

with Mulkey or the site of the alleged arson. We do not think that such an interpretation accurately reflects the intent of the Assembly.

To start, we acknowledge that it is problematical whether the nature of the three particular items listed in subsection (a) provides some support for the argument that the subsection evinces a legislative intent to create the limited class of discoverable reports urged by the state. It is clear that autopsies and blood tests — the second and third particular items listed by the subsection — are usually conducted upon materials collected from defendants and victims; the subject matter of "reports from the Division of Forensic Sciences of the Georgia Bureau of Investigation," although less clear, is arguably part of the same class of evidence, see generally OCGA § 35-3-4 (a) (1) (Code Ann. § 92A-302). Assuming without deciding that the three enumerated types of reports, taken as a whole, do provide some support for the state's view of the intended scope of discovery mandated by the statute, that support is, however, more than outweighed by our consideration of other principles of statutory construction.

"In arriving at the intention of the legislature, it is appropriate for the court to look to the old law and the evil which the legislature sought to correct in enacting the new law and the remedy provided therefor." *Barton v. Atkinson,* 228 Ga. 733, 739 (187 SE2d 835) (1972). "It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature." *New Amsterdam Cas. Co. v. Freeland,* 216 Ga. 491, 495 (117 SE2d 538) (1960). "The construction must square with common sense and sound reasoning." *Blalock v. State,* 166 Ga. 465, 470 (143 SE 426) (1928).

The primary problem which the General Assembly sought to address by enacting § 17-7-211 (Code Ann. § 27-1303) is too obvious to require more than brief mention; clearly, by giving the defendant a pre-trial opportunity to evaluate and verify scientific reports which will be introduced at trial, the discovery statute was intended to insure the integrity of those reports, thereby facilitating the truth-seeking function of the trier of fact. From this perspective the distinction urged by the state is unsound. In its place, the most reasonable interpretation of the statute is that if the state plans to put into evidence the results of comparison tests of material not collected from the defendant, the victim, or the crime scene, and the tests were performed as part of the investigation of the crime and their results have been reduced to the form of a written report, then the legislative purpose underlying § 17-7-211 (Code Ann. § 27-1303) will be fulfilled by, and indeed requires, placing the relatively small

additional burden upon the prosecution to provide the defendant with a copy of that report within the statutory period.

*Division Four of the opinion of the Court of Appeals and the judgment of that court are reversed. All the Justices concur, except Smith, J., who dissents as to Division One.*

DECIDED FEBRUARY 21, 1984.

*Stephen A. Williams, District Attorney, Steven M. Harrison, Assistant District Attorney,* for appellant.

*E. Neil Wester III,* for appellee.

*Joseph L. Chambers, Charles T. Shean III,* amicus curiae.