## A96A1632. HARMON v. THE STATE.
### (482 SE2d 730)

BIRDSONG, Presiding Judge.

Louise S. Harmon appeals her conviction of driving under the influence of alcohol. Harmon contends the trial court erred by denying her motion for mistrial after the trial court conducted an in chambers voir dire of a prospective juror who then was dismissed for cause and released out of the presence of Harmon and her counsel. Harmon further contends the trial court made several erroneous rulings regarding admission of evidence: by denying her motion for mistrial after the prosecutor asked her, in front of the jury, if she would retake the intoxilyzer test; by admitting copies of her first DUI test results and intoxilyzer certificates of inspection when the State failed to comply with OCGA § 17-16-23 by producing copies of these documents before trial; by denying Harmon's motion in limine seeking to exclude a copy of a videotape because the audio on the tape was not working; and also by allowing a witness to testify who was not listed on the State's witness list.

A police officer testified that he stopped Harmon because she was speeding and driving erratically, and testified that at the time Harmon's eyes appeared glassy, watery, and blood-shot, and the officer could detect the odor of alcohol. The officer saw a six-pack of beer on the front floorboard of the car which had some bottles removed.

When the officer conducted a field sobriety test, he noticed Harmon's speech was slurred and her words were mumbled. Based upon Harmon's performance on the field sobriety test, the officer concluded she was a less safe driver and placed Harmon under arrest for driving under the influence. Harmon was given a breath test on an Intoxilyzer 5000 and at first the results were inconclusive because of an inadequate breath sample. Harmon was again tested after she used an asthma inhaler and the results showed .120 and .112. Harmon was subsequently convicted of driving under the influence, and this appeal followed. *Held*:

1. The transcript shows that after a potential juror stated that he had more that one previous DUI and other DUI charges were pending against him, the trial judge requested and received, in Harmon's presence, the consent of Harmon's counsel to conduct further questioning of the potential juror in the judge's chambers. At some point, the trial judge concluded that the juror should be excused and dismissed the potential juror from further participation in the case without Harmon, her counsel, or the prosecutor being present. Later, when the parties returned to the courtroom, the trial judge advised the parties of what the court had done. Although Harmon and her counsel made no objection then, later, after the jury had been selected, Harmon made a motion for a mistrial. At this point, the trial court stated on the record what apparently transpired at an unrecorded bench conference: After the State expressed reservations about the potential juror serving and the juror also stated his concern, the trial court asked defense counsel for any comment and received none. Then, with the consent of both sides, the court discussed the matter further with the potential juror in chambers. The trial court further related that when everyone returned to court after a recess, the trial judge advised them that she had excused the potential juror and Harmon made no comment or objection.

Under our law, the defendant and the defense counsel have the right to be present at every stage of the proceedings (Ga. Const. 1983, Art. I, Sec. I, Par. XII; *Wilson v. State*, 212 Ga. 73, 74 (90 SE2d 557)), including the selection of the jury. *Allen v. State*, 199 Ga. App. 365 (405 SE2d 94). This right, however, may be waived by defendant personally, or by defendant's counsel if counsel does so in defendant's presence, or with the defendant's express authority, or if the defendant later acquiesces in counsel's waiver. *Wilson*, supra at 77-78; *Parker v. State*, 220 Ga. App. 303, 311-312 (469 SE2d 410). Although a reversal is frequently required when a defendant is not present at every stage of the proceedings, because of Harmon's action, we do not find that result is warranted in this case.

Pretermitting whether Harmon actually consented to the procedures used by her conduct or whether the trial court was lulled into believing that Harmon had consented to the procedures used in this case (see *Sullens v. State*, 239 Ga. 766, 767 (238 SE2d 864); *Martin v. State*, 193 Ga. App. 581, 584 (388 SE2d 420)), it is apparent from the record that by her conduct after learning of the trial court's actions Harmon waived any potential error. Harmon was advised when the trial court returned to the courtroom that the potential juror had been excused, yet made no objection until further voir dire was conducted and the jury was selected and sworn. Then Harmon finally moved for a mistrial.

Under these facts, any error in the procedures used by the trial

court was waived. A motion for mistrial must be promptly made as soon as the party is aware of the matter giving rise to the motion. See *Perkins v. State*, 212 Ga. App. 225, 227 (441 SE2d 511); *Worley v. State*, 201 Ga. App. 704, 705 (411 SE2d 760). Rather than immediately objecting to the procedures used by the trial court when the potential juror could have been recalled, examined further by Harmon and the State, and the trial court could have considered any challenge in her presence, Harmon elected to wait until the potential juror had departed and the jury was sworn. At this point it was too late to object. See OCGA § 15-12-167; *State v. Sparks*, 257 Ga. 97, 98 (355 SE2d 658); *Harris v. State*, 212 Ga. App. 120 (441 SE2d 255). As one cannot complain of trial procedures used by the trial court which her own trial tactics or conduct procured or aided in causing (*Williams v. State*, 205 Ga. App. 445, 446 (422 SE2d 309)), this enumeration of error is without merit.

2. Harmon also alleges the trial court erred by denying her motion for mistrial after the prosecutor asked her, in front of the jury, if she would retake the intoxilyzer test after she used her asthma inhaler. Harmon's argument is based on her conclusion that the prosecutor was not permitted to ask this question. We disagree. Harmon, an intensive care respiratory therapist and certified pulmonary function technologist, testified that because she had used her asthma inhaler before the second test, those results were somehow invalid. In response, the prosecutor asked her if she would be willing to demonstrate to the jury that using an inhaler would result in false positive results. Although as Harmon argues there are a variety of reasons why she might not wish to take a retest, these reasons do not prohibit the asking of the question, and the prosecutor was not prohibited from, in effect, asking Harmon whether she believed her testimony enough to submit to another test. As a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse. *Whisnant v. State*, 178 Ga. App. 742, 743 (344 SE2d 536). As we find no abuse of discretion based on these facts, this enumeration of error is without merit.

3. Harmon also contends the trial court erred by admitting copies of her first DUI test results and intoxilyzer certificates of inspection because the State violated OCGA § 17-16-23 by not providing her copies of these documents before trial as she requested.

(a) OCGA § 17-16-23 (b) requires the State, upon proper request, to provide a defendant with "a complete copy of any written scientific reports in the possession of the prosecution which will be introduced in whole or in part against the defendant by the prosecution in its case-in-chief or in rebuttal." By its terms, this section defines "written scientific reports" as including, "but is not limited to, reports from

the Division of Forensic Sciences of the Georgia Bureau of Investigation; an autopsy report by the coroner of a county or by a private pathologist; blood alcohol test results done by a law enforcement agency or a private physician; and similar types of reports that would be used as scientific evidence by the prosecution in its case-in-chief or in rebuttal against the defendant." OCGA § 17-16-23 (a). Nevertheless, the term "scientific reports" has not been so broadly interpreted to include all reports of a general scientific nature. See *State v. Mulkey*, 252 Ga. 201, 202-205 (312 SE2d 601). In *Mulkey*, our Supreme Court construed "written scientific reports" under former OCGA § 17-7-211, which contains the same terms as OCGA § 17-16-23, to mean written scientific reports of "tests which generally are carried out during the course of the investigation of a crime." *Mulkey*, supra at 203. The court found that the General Assembly's purpose in enacting § 17-7-211 was to ensure the integrity of these reports by "giving the defendant a pre-trial opportunity to evaluate and verify scientific reports which will be introduced at trial," and thus facilitate "the truth-seeking function of the trier of fact." *Mulkey*, supra at 204. Applying this rationale, the Supreme Court found that a blood-grouping test used when a defendant donated blood "was not the type of investigation-generated written scientific report subject to the discovery provision of OCGA § 17-7-211." *White v. State*, 263 Ga. 94, 98 (428 SE2d 789). As nothing in the legislative history of OCGA § 17-16-23 suggests that we should give the same language used in this Code section a different interpretation from that given to the former OCGA § 17-7-211 (see 11 Ga. St. L. Rev. 137-156), we conclude that the certificate of inspection required by OCGA § 40-6-392 (f) is not a written scientific report within the meaning of OCGA § 17-16-23 (a). The certificates required by OCGA § 40-6-392 (f) are not "tests which generally are carried out during the course of the investigation of a crime" (*Mulkey*, supra at 203), and, therefore, the certificates are "not the type of investigation-generated written scientific report subject to the discovery provision of OCGA § 17-7-211." See *White v. State*, supra at 98. Instead, these inspections are conducted without regard to the investigation of any particular crime or case, but are done to assure that the breath-testing instruments are periodically inspected, tested, and standardized, and that all the electronic and operating components are properly attached and are in good working order. See OCGA § 40-6-392 (a) (1) (A). Accordingly, the trial court did not err in allowing the certificate of inspection to be introduced even though it was not provided to Harmon before trial.

(b) Although we find that the results of Harmon's first blood test are specifically included within the terms of OCGA § 17-16-23 (a) and thus should have been provided to Harmon under OCGA § 17-16-23 (b), we also find that any error was harmless because the report

merely showed an inadequate breath sample and was consistent with Harmon's theory of her case.

4. Harmon alleges the trial court erred by denying her motion in limine seeking to exclude a copy of a videotape because the audio on the tape was not working and the officer testified that the video camera did not always "zoom" as he would have liked and thus did not always show the complete scene. We find no error. There is no contention that the absence of sound in any way affected the visual images on the tape or that the zooming problems rendered the video an inaccurate portrayal of what took place. Accordingly, we find that the videotape was properly admitted. *Freeman v. State*, 216 Ga. App. 319, 321 (454 SE2d 196); *Harper v. State*, 213 Ga. App. 444, 447 (445 SE2d 303).

5. Although Harmon accurately states that the trial court allowed a witness to testify, over Harmon's objection, who was not listed on the State's witness list, the record shows that this witness was an expert witness who was called to rebut Harmon's testimony concerning the operation of the Intoxilyzer 5000. As this requirement does not apply to rebuttal witnesses, there was no error. *Gibbons v. State*, 248 Ga. 858, 865 (286 SE2d 717); *Rowell v. State*, 176 Ga. App. 309, 310 (335 SE2d 689).

*Judgment affirmed. Blackburn, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 27, 1997.

*Novy, James & Vaughan, Eugene Novy, Deborah M. Vaughan,* for appellant.

*Ralph T. Bowden, Jr., Solicitor, Michele T. McCutcheon, W. Cliff Howard, Assistant Solicitors,* for appellee.