[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  15-14284
_____

D.C. Docket No. 2:14-cv-00202-WCO

YASUND Q. HANCOCK,

Plaintiff - Appellant,

versus

BRENT CAPE,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 17, 2017)

Before TJOFLAT, JULIE CARNES, and MELLOY,[*] Circuit Judges.

TJOFLAT, Circuit Judge:

---

[*] Honorable Michael J. Melloy, United States Circuit Judge for the Eighth Circuit, sitting by designation.

This case involves questions of state-law interpretation and the interplay between Georgia's renewal statute, Georgia's general *in forma pauperis* statute, and the federal rules governing *in forma pauperis* status.  We conclude that the District Court resolved those questions correctly and affirm its decision.

I.

On March 23, 2011, Yasund Hancock, an inmate at the Hall County Detention Center in Gainesville, Georgia, proceeding *pro se*, sued Brent Cape, a Peace Officer with the Hall County Sheriff's Department, and another corrections official under 42 U.S.C. § 1983 in the United States District Court for the Northern District of Georgia.  Hancock's claim alleged that in October 2010, Cape repeatedly struck him with a metal flashlight and sprayed him with pepper spray while yelling racial slurs at him.  As an indigent inmate, Hancock applied to proceed *in forma pauperi*s ("IFP") under the federal Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915.  A Magistrate Judge granted his application, and, pursuant to the PLRA, the filing fee required to initiate the suit began to be withdrawn from his inmate account in installments.  On June 3, 2011, Hancock was released from custody.  Shortly thereafter, he reapplied to proceed IFP.  The Magistrate Judge granted his application and informed Hancock that he did not have to pay an additional filing fee after his release to proceed.

2

In 2013, as the case advanced, Hancock hired an attorney. The day after Hancock retained counsel, Cape moved to dismiss Hancock's case on two grounds: first, that Hancock failed to exhaust his administrative remedies; and second, that his claim was barred by the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994). On March 5, 2014, the District Court granted Cape's motion over Hancock's objection and dismissed the complaint without prejudice on the ground that Hancock failed to exhaust his administrative remedies. Hancock never paid the remainder of the filing fee he owed to the District Court.

Thereafter, Hancock filed notice of appeal and applied to the District Court for leave to proceed IFP. The District Court denied his application on the basis that his appeal was not taken in good faith. Hancock then sought IFP status in this Court, and we denied his motion, finding that his appeal was frivolous. Thereafter, Hancock failed to pay this Court's filing fee, so his appeal was dismissed for failure to prosecute.

On September 5, 2014, Hancock returned to the District Court and filed his complaint anew. By that time, Georgia's two-year statute of limitations on personal injury actions, which governed Hancock's claim, had run.[1]  However,

---

[1] Claims brought under 42 U.S.C. § 1983 are tort actions "subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been

3

Georgia's "renewal statute," O.C.G.A. § 9-2-61, allows a plaintiff, under certain circumstances, to renew an action that was previously dismissed, even if the statute of limitations would bar an initial claim, as long as the dismissal was not on the merits and the second suit is brought within six months of the termination of the previous lawsuit. *See infra* Part II.A.

At the time he filed his renewed § 1983 suit, Hancock paid in full the $400 filing fee required to initiate that suit. He made no mention of the outstanding fees he owed to the District Court for filing his initial suit and to this Court for filing his appeal. After process was served, Cape moved to dismiss Hancock's renewed complaint, repeating his argument that Hancock's claim was barred by *Heck* and asserting that the renewal statute did not apply to Hancock's claim. While considering Cape's motion, the District Court discovered on its own initiative a potentially dispositive issue: Georgia's renewal statute conditions a plaintiff's renewal of a previously dismissed suit on "payment of costs in the original action." O.C.G.A. § 9-2-61. Upon discovery of this issue and the observation that Hancock still owed the costs incurred during his initial suit and appeal, the District Court ordered the parties to show cause why Hancock's complaint should not be dismissed for failure to pay the costs of his original action. Three days later, and

---

brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (citing *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938 (1985)).

two days before the District Court ruled on the matter, Hancock responded that the District Court's grant of IFP status in his initial suit, along with documents he received from the Eleventh Circuit pertaining to the denial of his pauper's application, led him to believe that he did not owe any costs stemming from that suit. That same day, Hancock applied to proceed with his renewed suit IFP.

After considering the parties' responses to the show-cause order, the District Court concluded that its initial intuition was correct, denied Hancock's IFP application, and dismissed Hancock's complaint for failure to pay the costs of his first suit. Hancock moved the District Court to reconsider its decision, the District Court refused to do so, and Hancock timely appealed.

## II.

Hancock recommenced his suit more than two years after the alleged incident giving rise to his claim occurred. But he filed his renewed suit within six months of filing his initial suit. Thus, if Georgia's renewal statute is inapplicable to Hancock's renewed suit, the case is barred by the statute of limitations. If the renewal statute applies, it isn't.

Generally, the renewal statute does not apply unless a plaintiff first pays the costs he incurred in his initial suit, and it is undisputed that Hancock did not pay the costs he owed from his first suit. But Hancock argues that his failure to pay those costs falls under an exception to the general rule, and that he should

5

nevertheless be allowed to revive his claim pursuant to the renewal statute.  He advances two arguments in support of this proposition.  First, he argues that the good-faith exception to the renewal statute's cost-payment requirement, which the Georgia Court of Appeals has recognized, should apply to him.  Second, he argues that Georgia law's generous treatment of paupers, as compared to federal law's treatment of them, counsels us to construe the cost-payment requirement to be inapplicable to him.  We consider those arguments in turn below.  But first, we must address whether the cost-payment requirement applies to Hancock at all.

## A.

As a threshold matter, we must decide whether, under Georgia law, the cost-payment requirement applies to plaintiffs like Hancock whose initial cases were involuntarily dismissed.[2]  The renewal statute, O.C.G.A. § 9-2-61, states,

> When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as required by subsection (d) of Code Section 9-11-41; provided, however, if the dismissal or discontinuance occurs after the expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once.

---

[2] Hancock did not raise this issue in his brief, but Cape addresses this point and the District Court correctly confronted the question in its analysis before proceeding to Hancock's arguments.

6

O.C.G.A. § 9-2-61(a).  The Georgia Supreme Court long ago held that, despite its plain language ("When any case has been commenced . . . and *the plaintiff* discontinues or dismisses the same"), renewal is available under § 9-2-61 to plaintiffs whose cases were involuntarily dismissed as well, provided that the prior involuntary dismissal did not reach the merits of the claim.  *Clark v. Newsome*, 180 Ga. 97, 178 S.E. 386, 388 (Ga. 1935).  That holding, however, does not address whether plaintiffs whose suits were involuntarily dismissed must pay the costs incurred from their initial suits before renewing their actions.  Section 9-2-61 incorporates the cost-payment requirement from another provision: it states that renewal is "subject to the requirement of payment of costs in the original action *as required by subsection (d) of Code Section 9-11-41*."  O.C.G.A. § 9-2-61(a) (emphasis added).  Section 9-11-41(d) in turn mirrors § 9-2-61(a)'s apparent reference to only voluntarily dismissed suits, stating that "[i]f *a plaintiff* who has dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the plaintiff shall first pay the court costs of the action previously dismissed."  O.C.G.A. § 9-11-41(d) (emphasis added).

It makes sense that if the Georgia Supreme Court interpreted § 9-2-61 to apply to involuntarily dismissals in spite of its plain language, it would likewise construe § 9-11-41(d)'s similar language to require plaintiffs whose cases were involuntarily dismissed to pay the costs of their prior actions before commencing a

second suit as well.  There is no policy reason that voluntarily and involuntarily dismissed lawsuits should be treated differently under the statute.

But alas, the Georgia Court of Appeals' opinion in *Muhammad v. Massage Envy of Ga., Inc.*, 322 Ga. App. 380, 745 S.E.2d 650 (Ga. Ct. App. 2013), stated otherwise.  In *Muhammad*, the Court of Appeals, sitting *en banc*, held that § 9-11-41(d) should be narrowly construed to require payment of costs by only those parties who voluntarily dismissed their suits.  *Id.* at 382, 745 S.E.2d at 652.  The Court adopted a plain-language construction of § 9-11-41(d) in reaching its decision.  *See id.* (observing that § 9-11-41 "[b]y its terms" makes no reference to involuntary dismissals).  Thus, the Court overruled its own prior decision in *Crane v. Cheeley*, 270 Ga. App. 126, 605 S.E.2d 824 (Ga. Ct. App. 2004).  In *Crane*, the Court of Appeals affirmed the trial court's ruling that it lacked jurisdiction to hear the plaintiff's renewed property suit, because the plaintiff failed to pay costs he owed from identical suits he filed earlier in the same year.  *Id.* at 126, 605 S.E.2d at 825.  The trial court had involuntarily dismissed Crane's prior suits by granting the defendant's motion to dismiss in the first claim and granting summary judgment in the second.  *Id.*

Notwithstanding the *Muhammad* decision, we are convinced the District Court correctly concluded that § 9-2-61's cost-payment requirement applies

8

equally to involuntary dismissals and voluntary dismissals.[3]  Although we give

lower state-court opinions "proper regard" when considering a question of state-

law interpretation, "the State's highest court is the best authority on its own law."

*C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465, 87 S. Ct. 1776, 1783 (1967).  Here, we

have convincing reason to believe that the Georgia Supreme Court would decline

to follow the Court of Appeals' construction of § 9-11-41(d)  in *Muhammad*.  For

one thing, *Muhammad* appears to have been hastily decided.  The *Muhammad*

court failed to acknowledge or address its prior decision in *Shaw v. Lee*, 187 Ga.

App. 689, 371 S.E.2d 187 (Ga. Ct. App. 1988).  In *Shaw*, the Court of Appeals

stated that in order to benefit from the renewal statute, an involuntarily dismissed

suit "must be treated in the same way as a voluntary dismissal" with respect "to the

payment of costs."  *Id.* at 690, 371 S.E.2d at 189.  Nor did the *Muhammad* court

make any effort to explain why it concluded that § 9-11-41(d) should be construed

---

[3] Cape argues alternatively that Hancock cannot rely on the renewal statute because his first suit was "void."  Georgia courts have long held that the renewal statute can only revive "voidable," not "void," lawsuits.  *E.g.*, *Hobbs v. Arthur*, 264 Ga. 359, 360, 444 S.E.2d 322, 323 (Ga. 1994).  Hancock responds that his first suit was "voidable" because the District Court dismissed it without prejudice.  Although Georgia courts have not enumerated a comprehensive list of dismissed suits that constitutes each category, they have explained that suits that can be fixed by amendment to the pleadings, like suits in which the opposing party did not attach affidavits required by law, are "voidable," *see Rector v. O'Day*, 268 Ga. App. 864, 603 S.E.2d 337 (Ga. Ct. App. 2004), while suits that cannot be corrected through amendment, like suits in which the plaintiff lacked standing, are "void," *see Mikell v. Certain Underwriters at Lloyds, London*, 288 Ga. App. 430, 654 S.E.2d 227 (Ga. Ct. App. 2007).  In this opinion, we do not address whether a suit dismissed for failure to exhaust administrative remedies is "void" or "voidable" for purposes of Georgia's renewal statute, because Hancock's appeal fails either way.

narrowly, while § 9-2-61's nearly identical language must be generously construed far beyond its plain text.

More importantly, although the Georgia Supreme Court has never squarely answered whether a plaintiff whose suit was involuntarily dismissed must pay the costs of the dismissed suit before recommencing the action, it has held that a plaintiff whose suit was dismissed by operation of law must do so. *See Couch v. Wallace*, 249 Ga. 568, 568, 292 S.E.2d 405, 406 (Ga. 1982) (holding that a suit dismissed by operation of law for failure to prosecute "requires the same prepayment of costs in actions dismissed" voluntarily under Georgia's Civil Practice Act). Of course, a suit dismissed by operation of law is not an involuntarily dismissed suit in the same sense that a suit dismissed by grant of an opponent's motion to dismiss is. But at a bare minimum, *Couch* shows the Georgia Supreme Court has already discarded the plain-text approach to § 9-11-41(d) the Court of Appeals employed in *Muhammad*. A suit dismissed by operation of law is not a voluntarily dismissed suit—a plain-text reading of § 9-11-41(d) would limit the provision's application to the latter only. The Georgia Supreme Court, however, disagreed with such a literal reading and applied it to both.

In our view, this departure from the plain text is appropriate given the Court's similar departure from § 9-2-61's plain text. As the District Court

observed, "a generous interpretation of the renewal statute mandates a similarly generous application of a condition precedent to the plaintiff's obligation to pay the costs of the previous suit." Otherwise, a plaintiff who realizes he has filed a defective suit could avoid responsibility for the unnecessary costs his error inflicted on the court system simply by sitting tight and waiting for the court to throw his claim out instead of dismissing it himself, even though voluntary dismissal would avoid wasting additional time and money. This result would defy common sense, and no reading of either statute suggests that Georgia's statutory scheme was designed to make such an inequitable result possible. *See State v. Mulkey*, 252 Ga. 201, 204, 312 S.E.2d 601, 604 (Ga. 1984) ("It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature. The construction must square with common sense and sound reasoning." (quotations and citations omitted)).

We therefore agree with the District Court's holding that the Supreme Court would construe § 9-11-41(d) to require payment of costs before involuntary dismissals may be renewed under § 9-2-61.

### B.

We now turn to Hancock's arguments as to why he should be forgiven for his failure to pay the costs of his first suit before invoking Georgia's renewal

statute.  First, Hancock says his failure to pay should be forgiven under the judicially recognized good-faith exception to the renewal statute.  The Georgia Court of Appeals has held that a plaintiff who still owes costs from a previously dismissed suit can proceed with renewal so long as he was unaware of those unpaid costs and he made a "good faith inquiry" to ascertain them.  *Daugherty v. Norville Indus., Inc.*, 174 Ga. App. 89, 90, 329 S.E.2d 202, 204 (Ga. Ct. App. 1985).  In *Daugherty*, before the plaintiffs refiled their claims—which they had voluntarily dismissed the first time around—their attorney asked the clerk of the Georgia trial court if they owed any remaining costs from their initial suits.  *Id.* at 89, 329 S.E.2d at 203.  The clerk told him they did not.  *Id.*  Later, after the defendant filed an answer and a motion to dismiss on the basis of unpaid costs leftover from the first suit, the plaintiffs promptly paid the newly discovered balance they owed.  *Id.*

Hancock's situation is different.  He admits he was aware he still owed costs leftover from his initial suit, and that he never paid those costs at any point, but says that he is entitled to a good-faith exception, too.  He argues that the Georgia Supreme Court would not only adopt "the thoughtful and just reasoning" the Court of Appeals employed in *Daugherty*, but would also extend the good-faith exception beyond the facts in *Daugherty* to reach his "novel situation" and allow him to proceed with his claim under the renewal statute on the basis that he has

12

maintained pauper status and has remained unable to pay the costs he owes throughout the course of his litigation.

We are not persuaded that the Georgia Supreme Court would allow Hancock to rely on an extension of the good-faith exception to save his claim. *Daugherty* makes clear that the good-faith exception temporarily forgives a plaintiff who believes he has squared up with the courts and has no reasonable way of finding out that he still owes costs from a prior suit before he renews the suit. Consistent with that rationale, the Court of Appeals also held in *Daugherty* that once discovered, the costs of the prior action "must be paid within a reasonable time in order to preserve jurisdiction." *Id.* This scenario is both factually and conceptually distinct from Hancock's situation. Although Hancock insists that he maintained pauper status throughout the series of events leading up to this appeal, he overlooks important aspects of this case's procedural history. First, his request to proceed IFP before this Court was denied by both the District Court and this Court because his appeal was frivolous and not taken in good faith. Nothing in the record indicates that, subsequent to that denial, Hancock ever inquired into whether he owed any costs resulting from that failed appeal. Nor is there any indication he had reason to believe that he was off the hook for the appeal costs, given that his pauper's application was denied. Federal Rule of Appellate Procedure 3(e) states that all costs are owed to the Court of Appeals upon *filing* a notice of appeal, not

13

upon proceeding with that appeal; it stands to reason that denial of leave to proceed IFP means that an appellant remains responsible for those costs.

Moreover, that Hancock failed to bring these outstanding costs to the District Court's attention when he tried to renew his suit counsels against applying the good-faith exception to his situation. Hancock paid in full the $400 filing fee to initiate his second suit and made no mention of his alleged pauper status. The District Court, in considering his renewed suit, discovered on its own initiative that he owed costs from his initial suit. Only after the District Court made this discovery and ordered him to show cause why his case should not be dismissed for this failure to pay did he seek pauper relief—from either the appeal costs or the costs he owed the District Court from his first suit. And Hancock never paid any portion of those prior costs, though he evidently had enough money to pay the filing fee to renew his claim.

It would have been wise for Hancock to use that money to pay some of the costs owed from his first suit and his failed appeal, inform the District Court that he still owed other outstanding costs, and then apply to proceed with his renewed action IFP to obtain relief from prepayment of the filing fee in the second action. But Hancock chose to ignore the costs he owed instead. This behavior does not warrant application of Georgia's narrow good-faith exception.

14

C.

Next, Hancock argues that we should interpret Georgia's renewal statute in conjunction with the State's more generous treatment of paupers such that we should read the cost-payment requirement out of the statute in cases where the plaintiff still owes costs under the federal pauper provisions. Georgia's general pauper statute states,

> When any party, plaintiff or defendant, in any action or proceeding held in any court in this state is unable to pay any deposit, fee, or other cost which is normally required in that court, if the party shall subscribe an affidavit to the effect that because of his indigence he is unable to pay the costs, the party *shall be relieved from paying the costs and his rights shall be the same as if he had paid the costs*.

O.C.G.A. § 9-15-2(a)(1) (emphasis added). In contrast, the federal pauper statute under which Hancock sought relief allows an indigent plaintiff to forego *prepayment* of courts costs as a prerequisite to filing a lawsuit. *See* 28 U.S.C. § 1915(a)(1) ("[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit . . . without *prepayment* of fees or security therefor, by a person who submits an affidavit that includes a statement . . . that the person is unable to pay such fees or give security therefor." (emphasis added)).

Hancock does not argue that Georgia's pauper statute, rather than the federal pauper statute, governs his claim.[4] Instead, he argues that Georgia's pauper statute

---

[4] We also note that O.C.G.A. § 9-15-2 would not have applied to Hancock had he brought his initial suit in Georgia court instead of federal court. Hancock was an inmate at the time; thus,

"provide[s] an answer to the question[ of] proper interpretation of the renewal statute with regard to a federal case."  Hancock's argument thus goes like this: because Georgia's more generous pauper law would have forgiven him completely of the costs he owed had he raised his claim in Georgia court, the renewal statute should be read in a manner that effectively incorporates Georgia's more forgiving pauper scheme to the extent that he should be deemed—in the eyes of Georgia law—forgiven of the costs he owes for purposes of the renewal statute's cost-payment requirement.[5]

We disagree.  If the renewal statute somehow incorporates its general pauper statute such that he would, for purposes of renewal, be deemed to have paid the costs he owed from his initial suit, Hancock still could not avoid the cost-payment

---

Georgia's Prison Litigation Reform Act would have governed his IFP application.  *See* O.C.G.A. § 42-12-15.  IFP status under Georgia's PLRA would not have absolved him from paying court costs, either.  *See id.* § 42-12-15(b)(1) ("A judicial order authorizing a prisoner to proceed in forma pauperis shall not prevent the freezing of a prisoner's inmate account nor the forwarding of any future deposits into that account to the court in accordance with the provisions of this chapter.").  It is unclear under Georgia law how the pauper provisions in the State's PLRA interact with the State's general pauper law.  For instance, we do not know if Hancock could have invoked § 9-15-2 after his release to obtain forgiveness of the prior costs he owed as an inmate, or whether he might have been forgiven under § 9-15-2 the costs of an appeal found to be frivolous.  Any conclusions on this front would be purely speculative, and because the federal pauper law clearly governs the case actually before us, would be of little instruction in the case at hand.

[5] Hancock did not raise this argument below; therefore, we would be justified in treating this argument as forfeited for purposes of this appeal.  *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1152 (11th Cir. 2011).  Nevertheless, we may choose to address the issue on our own initiative, as we do here.  *See Thomas v. Crosby*, 371 F.3d 782, 793 (11th Cir. 2004) (Tjoflat, J., concurring) ("[I]t is beyond dispute that, in general, we have the power to consider issues that a party fails to raise on appeal, even though the petitioner does not have the right to demand such consideration.").

requirement.  However the District Court's grant of his federal IFP application might have impacted his liability in the eyes of Georgia law for the costs of his initial action he owed the District Court, that grant of pauper status did nothing to alter the fact that he still owed costs from his failed appeal to this Court and that he never obtained pauper relief with respect to those costs.  His application to proceed with his appeal in this Court IFP was denied by both the District Court and this Court.  He did not seek relief from those costs until after the District Court ordered him to explain why his renewed action should not be dismissed for failure to pay those costs.

Suppose a similar series of events occurred in a hypothetical case brought in a Georgia Court under Georgia's general pauper statute.  Even under Georgia law, an indigent plaintiff cannot renew a previous suit without paying the not-yet-forgiven costs of the initial suit unless he notifies the court of his unpaid costs and his pauper status at the time he attempts to renew.  *See S. Grocery Stores v. Kelly*, 52 Ga. App. 551, 183 S.E. 924, 925 (Ga. 1936) ("When . . .  the plaintiff desires to recommence his suit, if he will make and file with his petition an affidavit in writing that he has good cause for recommencing his suit, and that, owing to his poverty, he is unable to pay the accrued costs in the case, he shall have the right to recommence said suit, without paying costs. . . .  It must be filed with the petition at the time it is filed.").

17

Under the circumstances of this case, then, Hancock could not have renewed his claim in Georgia court because he failed to invoke pauper status with respect to the appeal costs he still owed at the time he attempted to renew.  We thus find no decision by any Georgia court that suggests that a litigant whose federal pauper application was denied because he filed a frivolous appeal would *still* be deemed to have paid his court costs in the eyes of Georgia law, even if it is assumed that a pauper whose application was approved might be.  Hence, we find no support for the assertion that the Georgia Supreme Court would construe Georgia's renewal statute to deem Hancock to have met the cost-payment requirement under the circumstances of this case.

## III.

Accordingly, the District Court's dismissal of Hancock's claim is AFFIRMED.